FILED

05/01/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 13, 2016 Session

**CARL C. SMITH, II v.
ANDERSON COUNTY SHERIFF PAUL WHITE ET AL.**

**Appeal from the Chancery Court for Anderson County**
**No. 13CH5655      M. Nichole Cantrell, Chancellor**

_____

**No. E2016-00656-COA-R3-CV**

_____

This is an employment termination case involving a civil service employee. The petitioner was employed as a law enforcement officer with the Anderson County Sheriff's Department ("the Department") when the Department received notice from the Tennessee Department of Children's Services ("DCS") that the petitioner had been "indicated" as a perpetrator of child abuse in a DCS investigation pending in Roane County. The petitioner was placed on voluntary administrative leave. Upon subsequent notification that the DCS indication had been upheld through administrative review, the Department terminated the petitioner's employment in November 2009. The petitioner appealed the termination to the Civil Service Board of the Anderson County Sheriff's Department ("the Board"). While the appeal to the Board was pending, the petitioner filed a petition in the Roane County Chancery Court, seeking judicial review of DCS's administrative decision. Upon review, the Roane County Chancery Court entered a judgment on August 3, 2012, reversing the classification and directing DCS to change the classification from "indicated" to "unfounded." Through his counsel, the petitioner contacted Anderson County Sheriff Paul White to request reinstatement of his employment, but Sheriff White denied the request. Following a hearing conducted on August 6, 2013, the Board affirmed the Department's termination decision and denied the petitioner's motion for reinstatement filed during the hearing. The petitioner filed a petition for certiorari and review of the Board's decision with the Anderson County Chancery Court ("trial court") on September 4, 2013, naming the Board and Sheriff White as respondents (collectively, "Respondents"). The petitioner then filed a motion for partial summary judgment, averring that he had not been provided constitutionally sufficient notice of misconduct justifying termination. Following a hearing, the trial court, with Chancellor William E. Lantrip presiding, granted partial summary judgment in favor of the petitioner in an order entered February 27, 2014. The Respondents filed a "motion to revise order," pursuant to Tennessee Rules of Civil Procedure 54 and 59. Following a hearing, the trial court, with Chancellor M. Nicole Cantrell now presiding, vacated the prior order granting partial summary judgment and affirmed the Board's

decision. The petitioner has appealed to this Court. We affirm the portion of the trial court's judgment affirming the Board's decision to uphold the initial termination. However, having determined that the Board's decision to uphold the denial of reinstatement was not supported by substantial and material evidence and yielded an arbitrary and capricious result, we reverse the trial court's affirmance of the Board's decision to uphold Sheriff White's denial of the employee's September 2012 request and the Board's denial of the petitioner's motion for reinstatement. We remand for entry of an order to reinstate the petitioner to his employment and a determination of back pay and other damages to be calculated from the point of his September 2012 request for reinstatement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

David S. Wigler, Knoxville, Tennessee, for the appellant, Carl C. Smith, II.

Arthur F. Knight, III, Knoxville, Tennessee, for the appellees, Anderson County Sheriff Paul White and Civil Service Board of the Anderson County Sheriff's Department.

**OPINION**

I. Factual and Procedural Background

Prior to accepting administrative leave in March 2009 and his subsequent employment termination in November 2009, the petitioner, Carl C. Smith, II ("Officer Smith"), had been employed with the Department as an officer investigating primarily property crimes. The factual and procedural history leading to the trial court's review of the Board's administrative decision is essentially undisputed and was summarized as follows in relevant part by the trial court in its final judgment:

> On or about December 3, 2008, Sergeant Jeff Davis, [Officer Smith's] direct supervisor, received information that [Officer Smith] was under investigation by the Roane County [DCS], for allegations of child abuse.
>
> Upon learning this information, Sergeant Davis informed his supervisor, Lieutenant Braden. Anderson County Sheriff, Paul White was also informed at this time.

2

Soon after, [DCS] was contacted by the Anderson County Sheriff's Department in an attempt to verify the information that the Sheriff's Department had received concerning [Officer Smith].

[DCS] did not release any information regarding the investigation to the Anderson County Sheriff's Department due to the confidential nature of their investigation.

On February 6, 2009, Sergeant Davis received a letter from Lisa Lund, a [DCS] case reviewer, informing him that [Officer Smith] had been "identified as the alleged perpetrator of child abuse in an indicated report that [DCS] has investigated."

The February 6, 2009 letter further stated "It is our understanding that Carl C. Smith, [II], is in a caretaker, supervisory, instructional or treatment role with you[r] agency, which constitutes an emergency situation as described in DCS rules. You should take immediate action to ensure that the individual is no threat to any child in their care."

The February 6, 2009 letter also indicated that [Officer Smith] had been notified of his right to an administrative hearing.

On or about March 2, 2009, [Officer Smith] had a meeting with his supervisors regarding the February 6, 2009 letter from [DCS].

Subsequently, [Officer Smith] requested to take administrative leave in order to appeal [DCS's] decision.

[Officer Smith's] request for administrative leave without pay was granted by Sheriff White.

On or about May 8, 2009, [Officer Smith] participated in an administrative hearing before an Administrative Judge for [DCS], wherein the Administrative Judge upheld [the] designation of [Officer Smith] as an indicated perpetrator of child abuse.

On September 21, 2009, Sergeant Jeff Davis was copied with a letter from [DCS] to [Officer Smith], which stated "as a result of an Administrative Hearing, DCS has reviewed the investigation that identified you as the perpetrator of child abuse . . . in Roane County and has

3

determined that this report was properly classified as Allegation Indicated/Perpetrator Indicated. As evidenced by this letter, DCS is officially notifying you and your employer of the results.["]

The Anderson County Sheriff's Department had no positions available in November 2009 that would ensure that [Officer Smith] would not come into contact with children.

On November 6, 2009, Sheriff Paul White mailed a letter to [Officer Smith] regarding "Notification of Intent to Terminate[."]

The November 6, 2009 Termination Letter stated "notification is hereby given to you that the Anderson County Sheriff's Department intends to terminate your employment status as Deputy Sheriff on November 20, 2009. This decision is based on [DCS's] emergency status determination imposed on you and the subsequent affirmation of that decision by the state Administrative Law Judge."

The November 6, 2009 termination letter continued to state "under existing Civil Service Board rules and regulations that you have the right to appeal this decision to the Anderson County Civil Service Board within ten (10) days of the date of termination. You will be eligible to reapply to the Anderson County Sheriff's Department when the DCS emergency status has been removed.["]

[Officer Smith] timely requested an appeal to the [Board] on November 19, 2009.

The [Board] hearing was delayed, at the request of parties and for reasons that cannot be determined from the record in this matter.

The [Board] hearing did not take place until August 6, 2013.

The Commissioner of [DCS] affirmed the Administrative Law Judge's upholding the designation of [Officer Smith] as an "indicated" perpetrator of child abuse.

[Officer Smith] filed a lawsuit in the Chancery Court of Roane County seeking Judicial Review of the Commissioner's decision.

On August 1, 2012, the Honorable Frank V. Williams, III, of the Roane County Chancery Court, entered a Judgment reversing the determination of [DCS] and the Administrative Judge, finding that the evidence against [Officer Smith] did no[t] preponderate in favor of an indication.

Chancellor Williams specifically held in his opinion that "The Court does not find that the decision of Respondent (the Commissioner) was made arbitrarily or capriciously, or that any of his State or Federal rights have been violated."

On August 6, 2013, the [Board] conducted a hearing and unanimously upheld Sheriff White's decision to terminate [Officer Smith] in November of 2009.

The [Board] found that [Sheriff White's] actions were justified at the time he took them, based on the information available to him at the time he acted.

(Paragraph numbering omitted.)

In addition, it is undisputed that following the Roane County Chancery Court's reversal of the administrative law judge's ("ALJ's") decision regarding the DCS classification,[1] Officer Smith's counsel sent a copy of the respective judgment to Sheriff White's counsel and requested Officer Smith's reinstatement to the Department.[2] Sheriff White acknowledged in testimony presented during the Board hearing that he declined the reinstatement request. Officer Smith then filed a "Motion for Summary Reinstatement," based on the Roane County judgment, with the Board at the opening of the August 6, 2013 hearing. The Board denied the motion. Apart from requesting reinstatement, Officer Smith did not undergo a reapplication process with the Department.

Officer Smith filed his petition for writ of certiorari with the trial court on September 4, 2013. On October 21, 2013, Officer Smith filed a motion for partial

---

[1] As the trial court noted, the ALJ's affirmation of DCS's decision was subsequently affirmed by the DCS Commissioner. For ease of reference, we will refer to the ALJ's decision as encompassing the Commissioner's affirmation throughout the remainder of this Opinion.

[2] Sheriff White was represented before the Board by Anderson County Law Director N. Jay Yeager, who also represented Respondents in the instant petition prior to Respondents' current counsel's filing a notice of appearance on December 2, 2013.

summary judgment on his claim that Sheriff White's November 2009 notice of termination violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution ("Due Process Clause") by "failing to provide constitutionally sufficient notice of any misconduct justifying termination of his property right."[3] Following a hearing conducted on February 7, 2014, the trial court, with former Chancellor Lantrip presiding, granted partial summary judgment in favor of Officer Smith in an order entered February 27, 2014. In that order, the trial court found that Sheriff White's November 2009 notice of termination "did not contain a valid reason for dismissal, and therefore that the initial termination of [Officer Smith's] property right in employment violated the Due Process Clause . . . ." The trial court also found that Respondents "violated the Fourteenth Amendment by failing to promptly reinstate" Officer Smith following the Roane County Chancery Court's reversal of the DCS indication.

Respondents filed their "Motion to Revise Order" on April 29, 2014, pursuant to Tennessee Rules of Civil Procedure 54 and 59, asserting, *inter alia*, that the trial court had erroneously considered a motion for summary judgment when reviewing the Board's administrative decision. They concomitantly filed a motion to stay execution of partial summary judgment. On December 16, 2014, Officer Smith filed a response to the motion to revise the order. He also filed a "Motion for Hearing and Notice of Filing of Rule 11 Motions," regarding the motion to dismiss previously filed on October 7, 2013. Respondents subsequently filed a response to Officer Smith's motion for sanctions and a reply to Officer Smith's response to their motion to revise the order.

Following a hearing conducted on March 27, 2015, the trial court, with Chancellor Cantrell now presiding, vacated the prior order granting partial summary judgment. In an order and memorandum opinion entered April 21, 2015, the trial court found in relevant part:

> Based on the limited information that was included in [Chancellor Lantrip's] memorandum opinion, I cannot say that he did not misapply the law in this case and relied too heavily on this later finding by Chancellor Williams [in the review of DCS's administrative determination] that there was no basis for the allegations of DCS.

---

[3] As this Court has explained, the "Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution are the foundations for procedural due process claims" and "provide the same protection." *Kelley v. State, Dep't of Children's Servs., Child Protective Servs.*, No. M2006-02631-COA-R3-CV, 2008 WL 933490, at *4 (Tenn. Ct. App. Apr. 3, 2008) (citing *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997)).

The letter that the sheriff sent stated that he intended to terminate and then gave a reason for his intention to terminate, citing the [DCS] emergency status determination and then the subsequent affirmation and decision by the [ALJ].

Whatever Chancellor Williams ruled has nothing to do with those reasons, and I'm going to set it aside and we can set it for hearing again.

Meanwhile, on April 1, 2015, Officer Smith filed an "Amended, Restated and Renewed Motion of Petitioner for Summary Judgment and/or Declaratory Judgment," asserting that Sheriff White violated his due process rights by providing insufficient notice of termination, failing to provide a pretermination hearing, and failing to reinstate his employment following the Roane County Chancery Court's reversal of DCS's determination. He also asserted that both Respondents violated his due process rights by denying him a fair trial and denying him an opportunity to be heard at the hearing before the Board. He further asserted that the Board violated his due process rights by upholding the employment termination. Officer Smith requested reinstatement, including back pay and reimbursement for benefits; reimbursement for any expenses necessary to recertification as a peace officer; and attorney's fees, expenses, and court costs. On July 2, 2015, Respondents filed a response to Officer Smith's amended motion and their own motion for summary judgment.[4]

Following a hearing conducted on July 10, 2015, the trial court took the matter under advisement and subsequently entered an "Opinion" on August 14, 2015. The court affirmed the Board's decision to uphold the termination of Officer Smith's employment and refusal to reinstate Officer Smith following the Roane County Chancery Court's reversal of DCS's indicated classification. The court entered an "Amended Opinion" on August 20, 2015, making essentially the same findings but reserving judgment on all issues except the amended summary judgment motion and declaratory judgment motion that had been before the court on July 10, 2015. The court denied both motions. The court then directed the parties to file briefs regarding "any outstanding claims for relief" within sixty days of the Amended Opinion's entry.

Officer Smith and Respondents respectively filed proposed findings of fact and conclusions of law. Following a hearing conducted on January 8, 2016, the trial court entered a final judgment on February 29, 2016, affirming the Board's decision upon finding that Respondents did not violate Officer Smith's due process rights. The court specifically found as pertinent to this appeal, *inter alia*, that "the stated grounds for

---

[4] On June 2, 2015, Respondents filed a motion for leave to file a third-party complaint against the State, DCS, and individual DCS employees as potentially liable for Officer Smith's purported damages. They voluntarily withdrew this motion prior to the final hearing.

termination, the DCS indication of Smith as a perpetrator of child abuse and the affirmation of that indication by the [ALJ] meet one or more of the listed reasons the Sheriff may terminate an employee for cause" under the Policies and Procedures Governing the Operations of the Civil Service System for the Anderson County Sheriff's Department ("Department's Policies and Procedures").

The trial court also specifically found that during the Board hearing, Officer Smith exercised his rights to appear in person, to be represented by counsel, and to cross-examine witnesses. The court further found that Officer Smith waived his right to testify before the Board when his counsel moved for involuntary dismissal at the close of Sheriff White's proof and then made an offer of proof that Officer Smith was innocent of any child abuse. In response to issues raised by Officer Smith, the court determined that the Board had reached its decision without improperly relying on the delay in scheduling the Board hearing or the fact that Officer Smith had not reapplied for employment with the Department. Officer Smith timely appealed.

## II. Issues Presented

Officer Smith has presented eight issues for our review, which we have restated as follows:

1. Whether the trial court erred by finding that the notice of termination issued by Sheriff White provided sufficient notice of grounds for termination of Officer Smith's employment to satisfy the Due Process Clause, the requirements of Tennessee Code Annotated § 38-8-304(1), and applicable Civil Service Rules.

2. Whether the trial court erred by declining to find that Sheriff White violated the Due Process Clause, Tennessee Code Annotated §§ 38-8-304(2) and 38-8-305(b), and applicable Civil Service Rules by failing to provide a meaningful pretermination hearing on the merits of any charges against Officer Smith.

3. Whether the trial court erred by declining to find that Respondents violated the Due Process Clause, Tennessee Code Annotated § 38-8-304, and applicable Civil Service Rules by refusing to reinstate Officer Smith's employment after the Roane County Chancery Court determined that DCS's classification of Officer Smith as indicated in a child abuse investigation was unfounded.

8

4.      Whether the trial court erred by declining to find that the Board violated the Due Process Clause, Tennessee Code Annotated § 38-8-304, and applicable Civil Service Rules by refusing to reinstate Officer Smith's employment after Sheriff White failed to present evidence of misconduct during the Board hearing.

5.      Whether the trial court erred by declining to find that the Board violated the Due Process Clause, Tennessee Code Annotated § 38-8-305(b), and applicable Civil Service Rules by denying Officer Smith an opportunity to present evidence at the Board hearing.

6.      Whether the trial court erred by declining to find that the Board violated the Due Process Clause, Tennessee Code Annotated § 38-8-304, and applicable Civil Service Rules by improperly relying upon the delay in scheduling the Board hearing as grounds to uphold the termination.

7.      Whether the trial court erred by declining to find that the Board violated the Due Process Clause, Tennessee Code Annotated § 38-8-304, and applicable Civil Service Rules by improperly relying upon Officer Smith's failure to apply for re-employment as grounds to uphold his employment termination.

8.      Whether the trial court erred by declining to find that Officer Smith was entitled to reinstatement or front pay; back pay, including the value or cost of replacement of all lost benefits of employment; and attorney's fees at trial and on appeal pursuant to 42 United States Code § 1988.

## III.  Standard of Review

Officer Smith appeals from the trial court's judgment rendered pursuant to the statutory writ of certiorari provided by Tennessee Code Annotated §§ 27-9-101 to -114 (2000 & Supp. 2016).  This writ is available following, *inter alia*, a civil service board proceeding affecting a civil servant's employment.  *See* Tenn. Code Ann. § 27-9-101 (2000); *City of Memphis v. Civil Serv. Comm'n*, 238 S.W.3d 238, 242 (Tenn. Ct. App. 2007), *perm. app. denied* (Tenn. Sept. 24, 2007).  Tennessee Code Annotated § 27-9-114(b)(1) (Supp. 2016) provides that "[j]udicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act ["UAPA"], § 4-5-322."  *See, e.g.,*

9

*Tidwell v. City of Memphis,* 193 S.W.3d 555, 564 (Tenn. 2006) (concluding that "under section 27-9-114," proceedings before a city's on-the-job inquiry panel, "as well as the standard of judicial review of its decisions, are governed by the UAPA."); *Hoback v. City of Chattanooga*, 492 S.W.3d 248, 257 (Tenn. Ct. App. 2015), *perm app. denied* (Tenn. Feb. 18, 2016) (determining that Tennessee Code Annotated § 4-5-322(h) provided the proper standard of review for a city council's action affecting a police officer's employment).

Tennessee Code Annotated § 4-5-322(h) (2015) provides:

(h)      The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

         (1)      In violation of constitutional or statutory provisions;

         (2)      In excess of the statutory authority of the agency;

         (3)      Made upon unlawful procedure;

         (4)      Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

         (5)      (A) Unsupported by evidence that is both substantial and material in the light of the entire record.

                 (B)   In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Upon determining that an agency has employed the proper legal principles, this Court will proceed to consider the agency's findings. *See Hoback*, 492 S.W.3d at 258. As this Court has explained:

Upon confirming that an agency has employed the proper legal principles in the case under review, this Court must then consider the disputed factual findings and address whether the agency had a reasonably sound basis for making those findings. *See McEwen v. Tenn. Dept. of*

*Safety,* 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). Like the trial court, this Court applies the substantial and material evidence standard in reviewing the agency's findings of fact. *Bobbitt v. Shell,* 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003). Substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion" and to furnish a reasonably sound basis for the decision under consideration. *City of Memphis v. Civil Serv. Comm'n,* 216 S.W.3d 311, 316 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n,* 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)); *Dickson v. City of Memphis Civil Serv. Comm'n,* 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005); *Pruitt v. City of Memphis,* 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005); *Bobbitt,* 115 S.W.3d at 510.

As directed by the statute, we take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B). When the agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight. *Pruitt,* 2005 WL 2043542, at *7. Moreover, the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result. *Martin v. Sizemore,* 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). Rather, we may reject an administrative determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence. *Id.*

Likewise, Tennessee Code Annotated Section 4-5-322(h)(4) permits a reviewing court to modify or reverse an administrative decision if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Code Ann. § 4-5-322(h)(4) (2005). A decision unsupported by substantial and material evidence is arbitrary and capricious. *City of Memphis v. Civil Serv. Comm'n,* 216 S.W.3d 311, 315 (Tenn. 2007). Yet, a clear error of judgment can also render a decision arbitrary and capricious notwithstanding adequate evidentiary support. *Id.* at 316. A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* (quoting *Jackson Mobilphone,* 876 S.W.2d at 110-11).

*City of Memphis v. Civil Serv. Comm'n*, 238 S.W.3d at 243. Although our review of an agency's factual findings is confined to the provisions of Tennessee Code Annotated § 4-5-322, we review matters of law *de novo* with no presumption of correctness. *See* Tenn. R. App. P. 13(d); *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 264 (Tenn. 2009).

IV. Notice of Termination

Officer Smith contends that the trial court erred by finding that the November 6, 2009 notice of termination issued by Sheriff White provided sufficient notice of grounds for Officer Smith's employment termination such that his due process rights were not violated. Alternatively, Officer Smith argues that the Board's decision upholding the notice of termination did not provide sufficient legal cause of termination and was thereby made upon unlawful procedure pursuant to Tennessee Code Annotated § 4-5-322(h)(3). Respondents contend that the termination letter provided sufficient notice because it informed Officer Smith that the charge against him was his classification by DCS as an indicated child abuse perpetrator with the basis for that charge consisting of the DCS emergency status determination and subsequent affirmation by the ALJ. Respondents argue that at least as early as DCS's February 6, 2009 letter to the Department, Officer Smith was aware of the DCS classification and investigation, as well as the allegations underlying the investigation. Upon our careful review, we agree with Respondents that the November 6, 2009 letter provided adequate notice of the cause for Officer Smith's employment termination at the time of the notice's issuance.

Regarding the due process to be afforded police officers facing disciplinary actions, Tennessee Code Annotated § 38-8-304 (2014) provides:

Before any dismissal, demotion, suspension without pay or transfer for punitive reasons may be imposed, the following must be complied with:

(1)    The police officer shall be notified in writing of all charges, the basis for the charges, and the action that may be taken;

(2)    The police officer shall be given an opportunity, within a reasonable time limit after the date of the written notice provided for in subdivision (1), to respond orally and in writing to the charges. The time limit shall be determined by the agency, but in no event shall it be less than five (5) calendar days unless agreed to by the police officer; and

(3)     In making a response, the police officer may be assisted by counsel at the officer's own expense.

Tennessee Code Annotated § 38-8-305 (2014) further provides:

(a)     A police officer who is dismissed, demoted, suspended or transferred for punitive reasons, may within a reasonable amount of time following such action, as set by the officer's agency, request a hearing. If such request is made in a timely manner, a hearing shall be held within a reasonable amount of time set by the agency. The hearing shall be set no later than fourteen (14) calendar days following the date of request, unless a later date is acceptable to the police officer.

(b)     At the hearing, the police officer and the officer's agency shall be afforded the opportunity to present evidence and to examine and cross-examine witnesses.

(c)     The hearing panel shall have the power to, and on the request of either the police officer or the officer's agency shall, issue subpoenas requiring the testimony of witnesses who have refused or failed to appear at the hearing.

(d)     The police officer shall also be given the opportunity to be represented by counsel at the hearing, unless such officer and agency are afforded, by regulation, the right to counsel in a subsequent de novo hearing.

(e)     The panel conducting the hearing shall rule on the admissibility of the evidence.

(f)     A record shall be made of the hearing.

In addition, section 1303 of the Department's Policies and Procedures states:

        The Sheriff may dismiss any employee for the good of the Department, but dismissal shall be for cause and every employee shall have the right of appeal.

(1)     Reasons for dismissal may include, but shall not be limited to:

13

a. Failure to meet prescribed standards of work; morality and ethics to an extent that makes an employee unsuitable for any kind of employment in the Department;

b. Theft or destruction of property;

c. Incompetence, inefficiency or negligence in the performance of duties;

d. Insubordination that constitutes a serious breach of discipline;

e. Conviction of a criminal offense;

f. Notoriously disgraceful personal conduct;

g. Unauthorized absence or abuse of leave privileges;

h. Acceptance of any valuable consideration which was given with the expectation or appearance of influencing the employee in the performance of his/her duties;

i. Falsification of records or use of official position for personal advantage;

j. Political activity as defined in Article 17;

k. Other violations as set forth within departmental policy.

(2) The employee shall be furnished an advance written notice containing the nature of the proposed action, the reasons therefore and his/her right to answer the charges in writing. This notice shall be furnished at least one (1) calendar week prior to the proposed effective date of the action.

(3) During the advance notice period the employee may be retained in duty status, placed on leave, with or without pay, by the Sheriff.

(4) If the employee fails to respond to the advance notice, the proposed action of the Sheriff shall be effective on the date specified with no need for further action. Otherwise, the Sheriff shall carefully consider the reply of the employee before making [a] final decision,

14

and at the earliest possible moment shall transmit to the employee a letter containing a final decision.

(5)     Former employees of the Department who have been dismissed, or resigned while dismissal charges are pending shall not be re-employed.

In the context of a DCS investigation, "'[i]indicated' means the classification assigned to an individual found to be a perpetrator of abuse, severe child abuse, child sexual abuse, or neglect as the result of investigation of a report of abuse." Tenn. Comp. R. & Regs. 0250-07-09-.01(9) (citing Tenn. Code Ann. § 37-1-406(i)). An individual so indicated by a DCS investigation may request a formal file review and, if the indicated classification is upheld, an administrative hearing. *See* Tenn. Comp. R. & Regs. 0250-07-09-.06-.08. The rules and regulations governing DCS procedure further provide the following standard for administrative review of an indicated classification:

(1)     A report made against an alleged perpetrator shall be classified as "indicated" if the preponderance of the evidence, in light of the entire record, proves that the individual committed abuse, severe child abuse, child sexual abuse, or neglect. Proof of one or more of the following factors, linking the abusive act(s) to the alleged perpetrator, may constitute a preponderance of the evidence:

(a)     Medical and/or psychological information from a licensed physician, medical center, or other treatment professional, that substantiates that physical abuse, sexual abuse, or severe physical abuse occurred;

(b)     An admission by the perpetrator;

(c)     The statement of a credible witness or witnesses to the abusive or neglectful act;

(d)     The child victim's statement that the abuse occurred;

(e)     Physiological indicators or signs of abuse or neglect, including, but not limited to, cuts, bruises, burns, broken bones or medically diagnosed physical conditions;

(f)     Physical evidence that could impact the classification decision:

15

(g)     The existence of behavioral patterns that may be indicative of child abuse/neglect and corroborates other evidence of abuse, severe child abuse, child sexual abuse, or neglect should be examined;

(h)     The existence of circumstantial evidence linking the alleged perpetrator to the abusive or neglectful act(s) (e.g., child was in care of the alleged perpetrator at the time the abuse occurred and no other reasonable explanation of the cause of the abuse exists in the record).

Tenn. Comp. R. & Regs. 0250-07-09-.05

Concerning emergency notification to an employer when an indicated perpetrator has access to children through employment, section 0250-07-09-.07 of the DCS Rules and Regulations provides in pertinent part:

(1)     The provisions of this Rule apply to individuals classified as perpetrators of abuse, severe child abuse, child sexual abuse, or neglect in an "indicated" report who pose an immediate threat to the health, safety, or welfare of a child or children to whom the alleged perpetrator has access.

* * *

(4)     As soon as reasonably possible after the Commissioner's designee has determined that an immediate threat to the health, safety, or welfare of a child or children to whom the alleged perpetrator has access exists, the Department shall notify in writing both the alleged perpetrator and the organization or person with whom the individual is associated identified of such immediate threat.

(a)     The notice shall contain the information set forth in Rule 0250-07-09-.06(10)(b); and

(b)     A statement that the organization or person with which the individual is associated shall receive notice of the Department's determination.

1.     The notice shall also contain the following:

16

> (i) that the organization or person shall ensure that the individual is not a threat to the safety of any child in their care; and

> (ii) that the individual has been notified of his or her rights to a hearing on the allegations, and that the organization or person shall be notified of the final decision regarding the allegations.

*See State, Dep't of Children's Servs. v. Davis*, No. E2010-02016-COA-R3-CV, 2011 WL 3209187, at *1 n.1 (Tenn. Ct. App. July 28, 2011) ("Upon being 'indicated,' DCS notifies the person and/or any employer that he or she is not allowed to work around children.").

In his November 6, 2009 letter to Officer Smith, Sheriff White stated:

> Notification is hereby given to you that the Anderson County Sheriff's Department intends to terminate your employment status as Deputy Sheriff on November 20, 2009. This decision is based on the [DCS] emergency status determination imposed on you and the subsequent affirmation of that decision by the state administrative judge.

> Under existing Civil Service Board rules and regulations you have the right to appeal this decision to the Anderson County Civil Service Board within ten (10) days of the date of termination.

> You will be eligible to reapply to the Anderson County Sheriff's Department when the DCS emergency status has been removed.

> If you have any questions regarding this decision, please feel free to contact me at your earliest convenience.

In finding that the termination letter provided sufficient notice, the trial court stated in its final order in relevant part:

> This Court finds that the notice of termination was sufficient in that [it] complie[d] with the T.C.A. § 38-8-304 and Section 1303 of the Policies and Procedures Governing the Operations of the Civil Service System for [the Department]. The ground for termination stated in the termination letter was the emergency status indication by DCS. The evidence [the

17

Department] is relying on is the determination of the DCS investigation and its subsequent review and affirmation by the [ALJ]. Smith was aware of the DCS indication and the affirmation by the [ALJ] as he was actively participating in the appeals process. Smith was properly notified that the grounds for termination were the DCS indication and the basis of those grounds was the DCS indication and subsequent affirmation by the [ALJ].

Upon our thorough review of the record, particularly the circumstances surrounding the November 2009 termination letter, we agree with the trial court on this issue.

As Respondents note, Officer Smith does not dispute that he was aware of the DCS investigation and his indicated status prior to his receipt of the notice of termination. He had received a copy of DCS's emergency notification letter informing the Department of the classification at the time the letter was sent on February 6, 2009, and had taken a leave of absence pending the result of the DCS investigation. Officer Smith argues, however, that because Sheriff White did not state in the notice of termination any specific wrongdoing or misconduct underlying the DCS indication, the letter was insufficient to afford Officer Smith his due process right to notice. We disagree.

In support of his position, Officer Smith relies in part on this Court's decision in *Brown v. State*, No. E2004-01272-COA-R3-CV, 2004 WL 2715283 (Tenn. Ct. App. Nov. 30, 2004), wherein this Court upheld the trial court's affirmance of an ALJ's review of DCS's decision to classify the petitioner as a perpetrator of child sexual abuse against his stepdaughter. As Officer Smith notes, this Court expressed "serious concerns" in *Brown* regarding the constitutionality of the then low standard of proof "permit[ting] an individual to be indicated as the perpetrator in a validated claim of child sexual abuse, along with the attendant consequences of that classification, based solely upon a showing of only substantial and material evidence." *See id.* at *8. The *Brown* Court explained that in comparison to the civil standard requiring proof by a preponderance of the evidence, "[s]ubstantial and material evidence is a very low threshold and can be achieved merely with evidence which is considered to be only just more than a scintilla or glimmer as defined in applicable case law." *See id.; see also Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999) (explaining that the standard of substantial and material evidence "'requires something less than a preponderance of the evidence . . . but more than a scintilla or glimmer.'") (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 280 (1988)) (citations omitted in *Gluck*).

However, the rules and regulations governing DCS's administrative review of an indicated classification were amended, effective November 25, 2006, to raise the standard from "substantial and material" to "a preponderance of the evidence." *See* Tenn. R. & Regs. 0250-07-09-.05(1). Even with the lower standard of review in effect at the time

18

*Brown* was decided, this Court nonetheless affirmed the trial court's decision, stating: "because we conclude there was substantial and material evidence to support the decision of the ALJ, and as that is the only issue properly raised on appeal, we reluctantly affirm the decision of the Trial Court." *See Brown*, 2004 WL 2715283, at *9.

Furthermore, in contrast to the instant action, the decision appealed in *Brown* was the administrative review of DCS's decision to classify the petitioner as an indicated perpetrator, not the employer's decision to act on DCS's classification. The petitioner in *Brown* was employed at the Taft Youth Development Center and "was notified that his employer would be informed that he was the perpetrator in a validated claim of child sexual abuse and that he no longer would be permitted to have any access to children." *Id.* at *3. No action taken by the employer, the Taft Youth Development Center, was at issue in *Brown*. *See id.* at *1. Relying also on this Court's decision in *Mumford v. Bd. of Educ. of City of Memphis*, 173 S.W.3d 452 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. Mar. 21, 2005), Officer Smith insists that the Department was under no legal obligation to terminate his employment and could have conducted its own investigation, allowing Officer Smith an opportunity to be heard before the Department in defense of the specific allegations against him prior to the Department's taking action. He therefore argues that the notice of termination was inadequate because it did not delineate the specific allegation of child abuse for which Officer Smith was indicated.

In a decision involving the Tennessee Teacher Tenure Act, *see* Tenn. Code Ann. §§ 49-5-501 to -515 (2016), the *Mumford* Court affirmed with modification the trial court's award of lost wages to a tenured teacher and assistant principal who had been reinstated following suspension of his employment due to a DCS investigation indicating him as a perpetrator of child abuse. *See Mumford*, 173 S.W.3d at 453. The alleged child abuse at issue was "paddling" utilized by the plaintiff as a form of discipline within his role as assistant principal. *Id.* The plaintiff had pursued appeal of DCS's classification, which had been overturned by the ALJ, reinstated by the DCS Deputy Commissioner, and ultimately overturned again by a chancery court review. *Id.* at 454. The school board in *Mumford* offered to reinstate the plaintiff following the conclusion of the appeals process regarding the DCS classification. *Id.* Because the plaintiff had opted to finish a contract with another school district for employment he had obtained while awaiting the appeals process, an issue arose regarding whether he was entitled to back pay upon his reinstatement by the defendant school district for the months he voluntarily completed a contract elsewhere. *Id.* Thus, the issue in *Mumford* was lost wages. The portion of the decision relied upon by Officer Smith is this Court's determination that the school board was liable for the plaintiff's lost wages despite having suspended the plaintiff in response to a letter from DCS. *See id.* at 456-57 ("Because it was under no legal obligation to suspend Mumford based solely on DCS' letter, at any time during the

19

pendency of the DCS investigation and appeals process, the Board could have reinstated Mumford or could have conducted its own investigation of the allegations against him.").

In this case, the trial court stated in its final order that it had considered *Mumford*, 173 S.W.3d 452, and "determined that it is not controlling on any of the issues at hand as the Review Board in *Mumford* had already determined to reinstate the employee and the issue in *Mumford* was . . . whether or not the employee was due back wages." The trial court therefore found *Mumford* to be factually distinguishable from the instant action because the Board had affirmed Officer Smith's employment termination. Officer Smith argues that this is a factual distinction without a legal difference because the principle remains that the Department did not have a legal obligation to terminate his employment and could have conducted its own investigation. *See id.* at 456 ("Short of a court order, it was not imperative that the Board suspend Mumford in response to DCS' [emergency notification] letter."). We recognize Officer Smith's point as far as it goes. However, as Respondents note, this case is unlike the situation in *Mumford* when the teacher was suspected of abuse in his professional capacity while ostensibly under the supervision of his employer. *See id.* at 453. In the case at bar, an investigation by the employer would have involved an agency from one county, the Anderson County Sheriff's Department, intervening in a confidential investigation conducted by an agency of another county, Roane County DCS, concerning Officer Smith's personal conduct with a minor. We determine Officer Smith's reliance on *Brown* and *Mumford* to be unavailing.

During the August 2013 Board hearing, Sergeant Jeff Davis testified that he was the supervisor over the unit in which Officer Smith had worked and that his role within the Department also included conducting internal affairs investigations into complaints against officers. Sergeant Davis stated that the Department first received information regarding the DCS investigation on or about December 3, 2008, at which point he began an administrative inquiry into Officer Smith's situation. Sergeant Davis described his immediate action as follows:

> After I received the information I notified my immediate supervisor who was Lieutenant Braden, I believe he notified the chief, Chief Lucas and the sheriff of information we had received. The following day, or that afternoon I believe, we went up to the DCS offices located in Anderson County and spoke with Ms. Becky Fusion at the office. We expressed our concerns over what we had heard. Ms. Fusion stated that even Mr. Smith – that he also has a right to privacy. She could not release anything but she would request an emergency look by the Nashville office into the matter that we had brought to our attention or was brought to our attention.

Sergeant Davis explained that after receipt of DCS's February 6, 2009 letter informing the Department of Officer Smith's status as an indicated perpetrator of child abuse, Sergeant Davis and other supervisors spoke with Officer Smith on March 2, 2009, at which point Officer Smith requested unpaid administrative leave "in an attempt to get this matter worked out and taken care of."

According to Sergeant Davis, no position existed in the Department in which Officer Smith "would not have a possibility of coming in contact with children and it was determined to be in his best interest for him that he go ahead and take administrative leave." Sergeant Davis explained that upon receipt of DCS's September 21, 2009 letter informing the Department that the ALJ had upheld Officer Smith's indicated classification, Sergeant Davis notified Sheriff White. Sergeant Davis acknowledged that Department personnel did not have any firsthand knowledge regarding the conduct of which Officer Smith was accused other than that it purportedly involved child abuse.

Sheriff White testified during the Board hearing that when Officer Smith's situation was brought to his attention in December 2008, he asked Sergeant Davis to look into it. He stated that when the Department received DCS's February 2009 notification letter, he allowed Officer Smith to voluntarily take administrative leave. According to Sheriff White, he decided to terminate Officer Smith's employment at some point in early December 2009 after receiving notice of the ALJ's decision from DCS in September 2009 and issuing a notice of termination to Officer Smith on November 6, 2009. When questioned regarding whether there was any position in the Department in which Officer Smith could have been placed where he would not have worked around children, Sheriff White stated:

> There is no place whatsoever. We have children in the jail. We have them come in the office. Dispatch has to talk to children on the phone. There is no place whatsoever in the sheriff's office.

As the trial court found in its final order, the DCS indication of Officer Smith as a perpetrator of child abuse "created a situation where there was no position within the Department that Smith could be moved to" because of the necessity of ensuring that Officer Smith did not come into contact with children while working for the Department. The DCS indication thus constituted a cause for termination for "the good of the Department" pursuant to section 1303 of the Department's Policies and Procedures. The record demonstrates that Officer Smith knew that the DCS indication created an untenable situation for his ability to work within the Department at least as early as his March 2009 meeting with supervisors following the February 2009 DCS emergency notification to the Department. Having taken administrative leave from the Department in March 2009, Officer Smith participated in an administrative hearing before an ALJ in

May 2009 concerning the DCS classification. At the time of receiving Sheriff White's November 6, 2009 notice of termination, Officer Smith had known since at least the issuance of DCS's September 21, 2009 notice to the Department that the ALJ had affirmed the classification of "indicated." We conclude that the trial court did not err in determining that the Board followed lawful procedure when it upheld the Department's notice of termination as sufficient to protect Officer Smith's due process rights.

## V. Pretermination Hearing

Officer Smith also contends that the trial court erred by declining to find that Sheriff White violated the Due Process Clause, Tennessee Code Annotated §§ 38-8-304(2) and 38-8-305(b), and applicable Civil Service Rules by failing to provide a meaningful pretermination "Loudermill" hearing on the merits of any charges against Officer Smith. *See Case v. Shelby Cnty. Civil Serv. Merit Bd.,* 98 S.W.3d 167, 170 n.1 (Tenn. Ct. App. 2002), *perm. app. denied* (Tenn. Dec. 9, 2002) ("The *Loudermill* Court held that a public employee who can be discharged only for cause must be given notice and an opportunity to respond to the charges against him prior to termination.") (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985)). Officer Smith asserts that Sheriff White, and ultimately the Board and the trial court, erroneously relied on the DCS proceedings to provide an opportunity for Officer Smith to respond to the specific charges against him. Respondents assert that Officer Smith was afforded the opportunity to respond to the allegations when he met with his superior officers in March 2009 and between the date that he received the November 6, 2009 termination letter and the date his termination took effect, November 20, 2009. Upon our thorough review, we conclude that the trial court did not err by declining to find that Officer Smith had been denied his right to a pretermination hearing.

Regarding what constitutes pretermination due process for an employee with a property right in continued employment, the United States Supreme Court held in *Loudermill*:

> The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill*, 470 U.S. 532, 546 (1985) (internal citations omitted).

As the *Case* Court explained in relevant part:

> The most fundamental element of due process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). "[N]otice and opportunity for [a] hearing appropriate to the nature of the case" must precede the "deprivation of life, liberty or property." *Loudermill,* 470 U.S. at 541, 105 S.Ct. 1487 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews,* 424 U.S. at 334, 96 S.Ct. 893 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

> \* \* \*

> *Loudermill* and its progeny have recognized that where the pretermination hearing has been less than a full evidentiary hearing, a more formal post-termination hearing is required. *Id.; Brock v. Roadway Express, Inc.,* 481 U.S. 252, 261, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987). The pretermination and posttermination procedures are intertwined and must be reviewed together to determine whether due process has been satisfied. *See, e.g., Carter v. Western Reserve Psychiatric Habilitation Ctr.,* 767 F.2d 270, 273 (6th Cir. 1985).

*Case*, 98 S.W.3d at 172-73.

In its final order, the trial court concluded regarding this issue:

> This case is not a typical case under <u>*Loudermill*</u> in that the employer is relying on an investigation being conducted by another state entity to which the employer was not granted access to the investigation due to the confidential nature of the DCS files. However, based on the record in this matter this court finds that [Officer Smith] was granted ample opportunity to "tell his side of the story" prior to the termination.

The first opportunity granted [Officer Smith] occurred on or about March 2, 2009 when Smith met with his supervisors regarding the initial letter from DCS to Sgt. Davis dated February 6, 2009. At this time, the initial DCS indication was discussed with Smith. No action to terminate was taken; instead Smith was granted his request for administrative leave without pay in order to pursue the appeals process.

The second opportunity granted [Officer Smith] resulted from the time period given between the Notice of Intent to Terminate and the effective termination date of November 20, 2009. During this period of time [Officer Smith] could have responded orally or in writing to the grounds for termination set forth in the Notice of Intent to Terminate letter from Sheriff White. There is no evidence on the record that Smith took this opportunity.

The third opportunity [Officer Smith] had to exercise his due process rights to "tell his side of the story" prior to termination occurred through the appeals process with [DCS] that [Officer Smith] was actively involved in. Sheriff White took no action to terminate [Officer Smith] until such time as this appeal to the [ALJ] was concluded and the Sheriff's Department was notified that Smith had been properly indicated as the perpetrator of child abuse.

We will address each of the three opportunities for hearing summarized by the trial court in turn. As to the first opportunity, it is undisputed that Officer Smith met with his supervisors following the Department's receipt of the February 2009 letter from DCS and accepted administrative leave while the DCS investigation was underway. Sergeant Davis testified that he first received information regarding the DCS investigation on or about December 3, 2008, at which time he notified his supervisor, Lieutenant Braden, who in turn notified supervisors going up the chain of command, first Chief Lucas and then Sheriff White. Sergeant Davis further testified that "we," apparently including Sergeant Davis and at least one other supervisor, attempted, without success, to obtain more information from DCS in December 2008.

According to Sergeant Davis, upon receipt of the February 2009 letter from DCS, Officer Smith met with Sergeant Davis and at least one other supervisor on March 2, 2009, at which time Officer Smith "requested to take administrative leave which is a nonpaid leave in an attempt to get this matter worked out and taken care of." When questioned regarding whether Officer Smith had another option besides taking administrative leave in March 2009, Sergeant Davis acknowledged that because no position existed within the Department wherein Officer Smith would not potentially be in

24

contact with children, "it was determined to be in his best interest for him that he go ahead and take administrative leave." Sheriff White testified that he "allowed" Officer Smith to take administrative leave in March 2009. The record contains no further indication of what transpired during Officer Smith's March 2, 2009 meeting with supervisors. We note that although Officer Smith had not received a pretermination notice in March 2009, he certainly would have known at the time he met with his supervisors and accepted administrative leave that his employment with the Department was in potential jeopardy as long as he was indicated as a child abuse perpetrator.

The second opportunity described by the trial court encompasses the period of time immediately following Sheriff White's November 6, 2009 advance notice to Officer Smith that his employment would be terminated effective November 20, 2009. Section 1303(2) of the Department's Policies and Procedures provides that an employee "shall be furnished an advance written notice containing the nature of the proposed action, the reasons therefore and his/her right to answer the charges in writing" within "at least one (1) calendar week prior to the proposed effective date of the action." Section 1303(4) provides that if the employee replies to the advance notice, "the Sheriff shall carefully consider the reply of the employee before making [a] final decision, and at the earliest possible moment shall transmit to the employee a letter containing a final decision." Section 1303(4) further provides: "If the employee fails to respond to the advance notice, the proposed action of the Sheriff shall be effective on the date specified with no need for further action." Although this policy could be clearer in terms of providing for a pretermination hearing, the fact remains that Officer Smith presented no proof that he requested a pretermination hearing in the interim between November 6 and 20, 2009, or that he submitted any type of written reply to the advance notice.

The third opportunity summarized by the trial court is the one with which Officer Smith takes the greatest issue. The trial court noted that the Department relied on the DCS investigation to determine whether Officer Smith's status as an indicated perpetrator of child abuse was warranted.[5] We agree that because Officer Smith knew his employment with the Department was jeopardized by the DCS indication, the DCS investigation and administrative appeal process did provide him with the fundamental

---

[5] In his brief on appeal, Officer Smith appears to inadvertently quote the trial court's August 20, 2015 "Amended Opinion" as though it were the February 29, 2016 "Final Order." In the Final Order, the trial court included the same summary of Officer Smith's three opportunities to be heard but omitted a paragraph from the Amended Opinion in which the court had found that "the due process requirements of a *Loudermill* pretermination hearing were satisfied by the appeals process and hearing held through DCS and the [ALJ] prior to Smith's termination." Although the trial court noted in the Final Order its prior finding that the Department did not deprive Officer Smith of his right to a pretermination hearing, it did not directly incorporate the findings on this issue from the Amended Opinion. We determine that in the Final Order, the trial court relied on all three of the opportunities for a pretermination hearing described therein.

element of due process that is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *See Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). We note, however, that at the time of DCS's September 2009 notification to the Department that the ALJ had upheld the indicated classification, the appeal process of the DCS decision was not yet complete. Officer Smith subsequently filed a petition for certiorari with the Roane County Chancery Court for judicial review of the administrative decision.

In terms of the opportunity for a pretermination hearing, Officer Smith could have responded to Sheriff White's advance notice with the information that the appeals process of the DCS indication was incomplete and with a request for a pretermination hearing before his supervisors. He did not. We conclude that the trial court did not err in determining that the Board followed lawful procedure when it upheld the opportunities afforded Officer Smith for a pretermination hearing as sufficient to protect Officer Smith's due process rights.

## VI. Denial of Reinstatement Requests

Officer Smith asserts that the trial court erred by declining to find that Respondents violated the Due Process Clause, Tennessee Code Annotated § 38-8-304, and applicable Civil Service Rules by refusing to reinstate Officer Smith's employment upon learning that DCS's classification of Officer Smith as an indicated perpetrator of child abuse had been reversed by the Roane County Chancery Court. Officer Smith also asserts, as a separate issue, that the trial court erred by declining to find that the Board violated the same due process, statutory and civil service requirements by refusing to reinstate Officer Smith's employment following the Board's August 2013 hearing when Sheriff White offered no proof of misconduct beyond the initial DCS classification. In the alternative, Officer Smith asserts that the Board's decisions to affirm Respondents' denial of reinstatement and to deny summary reinstatement following the Board hearing were made upon unlawful procedure, were "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion," or "unsupported by evidence" pursuant to Tennessee Code Annotated § 4-5-322(h).

Upon careful review, we conclude that the Board erroneously determined that in considering Sheriff White's refusal to reinstate Officer Smith, it could not consider the Roane County Chancery Court's reversal of the indicated classification. Likewise, we conclude that the trial court erroneously analyzed the denial of reinstatement according to the factual situation solely as it existed at the time of Officer Smith's initial employment termination prior to the Roane County Chancery Court's decision. We therefore determine that the decisions of the Board and the trial court regarding Officer Smith's reinstatement requests yielded an arbitrary and capricious result with no substantial or

material evidence presented to support that result. *See* Tenn. Code Ann. § 4-5-322(h)(4)-(5). In reaching this conclusion, however, we discern no violation of Officer Smith's due process rights in Respondents' denials of his requests for reinstatement.

Upon Officer Smith's petition for judicial review of the ALJ's affirmance of the DCS indicated classification, the Roane County Chancery Court entered its judgment ordering that the classification be changed to "unfounded" on August 1, 2012. The judgment, which is included in the record before us as an exhibit attached to pleadings filed by Respondents, provided the following:

> This case came on to be heard before the Honorable Frank V. Williams, III, Chancellor, upon the Petition for Judicial Review of the Final Order of the Commissioner of the Tennessee Department of Children's Services affirming the findings of Administrative Judge Carol Marcum that the Petitioner, Carl Smith, [II], is indicated as the perpetrator of child sexual abuse, the Response of the Department of Children's Services, the transcript of the Administrative Hearing and the entire record of the Department of Children's Services, Administrative Procedures Division's Hearing File, from all of which the Court finds that the evidence does not preponderate in favor of an indication; accordingly the findings and conclusions of the Administrative Judge and of the concurring opinion of the Commissioner of the Tennessee Department of Children's Services is hereby overturned, and the judgment against Carl Smith, [II], is dismissed. The Department is directed to modify the indication of Mr. Smith from indicated to unfounded. Costs are taxed to the Tennessee Department of Children's Services.

DCS did not appeal this judgment. In an opinion filed concomitantly with the judgment, the Roane County court explained, *inter alia*, its findings that inconsistencies existed in the statements of the victim of the alleged child sexual abuse and that DCS had not presented any other evidence indicating Officer Smith as a perpetrator. As Respondents note, the court did expressly state in its opinion that it did "not find that the decision of [DCS] was made arbitrarily or capriciously, or that any of [Officer Smith's] state or federal rights [had] been violated."

On appeal, Officer Smith explains that his counsel waited for the thirty-day appeal window to close following entry of the Roane County Chancery Court judgment before sending the judgment to Sheriff White's counsel and requesting Officer Smith's reinstatement. This places the date of the initial reinstatement request, which is not in the record before us, at approximately September 1, 2012. Respondents do not dispute that Officer Smith's counsel sent the reinstatement request following the judgment or that the

27

request was denied. When questioned during the Board hearing, Sheriff White acknowledged that he rejected the reinstatement request despite its providing notice to him of the Roane County judgment.

In the meantime, Officer Smith's timely request for a post-termination hearing before the Board had been postponed several times for reasons not fully clear to the trial court and not contained within the appellate record. The parties do not dispute, however, that the postponements were by agreement and are not an issue on appeal. The Board hearing was ultimately held on August 6, 2013. On that day, Officer Smith's counsel filed with the Board a motion for summary reinstatement based on the Roane County Chancery Court judgment and argued the motion during the hearing's opening. Sheriff White's counsel objected to the motion and urged the Board to review the termination decision based on what Sheriff White knew at the time of termination. The Board members voted unanimously to deny the motion for summary reinstatement and proceed with the hearing.

At the close of the Board hearing, the Board members voted unanimously to uphold Sheriff White's initial termination decision. Prior to entering an official vote, the Board again heard Officer Smith's counsel move for reinstatement based on the Roane County judgment. During discussion of the motion, Board members expressed their view that they were to review Sheriff White's actions based solely on the information Sheriff White had at the time of termination. In moving the Board to vote to uphold the termination decision, Board member Jack Rains stated in relevant part:

> I make a motion that this Board goes along with the letter that Sheriff Paul White wrote to [Officer Smith] dated November 6, 2009 and it states what it means, that you are eligible to reapply, the DCS emergency status has been removed. I can see what I have read in this whole packet that this will hold water. If he wants to reapply. I don't know if he has got a position available, that is up to him. And I don't know what his qualifications are. But in my opinion, he is at fault because it has been four years and he has never reapplied for a position with the sheriff's department for Anderson County[.]

Board member Bill Riggs seconded Mr. Rains's motion. Board member Roberts then stated:

> I go along. We came in here to this hearing to see whether the sheriff's department was justified in what they did with the information they had. And DCS is not a little run-of-the-mill something down here. DCS works with children. Who's better to give a statement than DCS. I

don't see how the sheriff could have gone against it. It made him liable, it made his department liable. [Officer Smith] can, it is plainly stated, he can reapply for his job and when it says reason for leaving he can say charges cleared. It is in here that he is not guilty. But at the time it had to be honored. So now if he wants his job back, let him reapply for it and let him put in whatever the reason for leaving or whatever and put the letter in there that he is not guilty. I think that is all we can do that we stand behind his termination and tell him that he is eligible to reapply. . . . And this is how we stand unanimous on this Board.

Although Officer Smith's counsel attempted to explain to the Board that reinstatement and the ability to reapply were not equal remedies for Officer Smith's continued loss of employment following the denial of his request for reinstatement, Board members persisted in maintaining during closing discussion that they were solely to consider Sheriff White's initial decision to terminate employment. The flaw in this reasoning is that in the interim between the November 2009 termination and the August 2013 Board hearing, Sheriff White had been presented with removal by final judicial order of the sole just cause he relied upon to terminate Officer Smith's employment.

Sheriff White acknowledged during the hearing that without the DCS classification of Officer Smith as an indicated perpetrator of child abuse, his just cause for terminating Officer Smith's employment no longer existed. We emphasize that the Roane County Chancery Court's judgment did not affect the validity of Sheriff White's initial November 2009 decision. However, when Sheriff White rejected Officer Smith's request for reinstatement in September 2012, he had the judicial reversal of the indicated classification before him, as did the Board when it denied Officer Smith's motion for reinstatement during the hearing. Moreover, the ability to reapply, together with a pool of applicants all with no guarantee of being hired, and with no consideration of back pay, is not a proper remedy for loss of a civil servant's property right in continued employment. *See Hoback*, 492 S.W.3d at 259 (explaining that an employee wrongfully deprived of a property right in employment "'can be made whole through an award of back pay and either reinstatement or, in certain circumstances, front pay'") (quoting *Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 432 (Tenn. Ct. App. 1992)).

In reviewing the Board's decision regarding reinstatement, the trial court stated in its final judgment in pertinent part:

It is undisputed in this case that employee Smith's termination had to be for cause under T.C.A. § 38-8-304 and Section 1303 of the Policies and Procedures Governing the operations of the Civil Service System for the [Department] which states[:] "The Sheriff may dismiss any employee for

29

the good of the Department, but dismissal shall be for cause and every employee shall have the right of appeal." However, to be clear, cause for termination must have existed at the time of termination in November of 2009. It is clear from the record in this matter that the cause stated for termination[,] the DCS indication as a perpetrator of child abuse and the upholding of that indication by the [ALJ], which is in compliance with Section 1303 of the Policies and Procedures Governing the operations of the Civil Service System for the [Department], existed at the time of termination. The [Department] and Sheriff White cannot reasonably be expected to anticipate a ruling by a Roane County Chancellor nearly three years after termination. Therefore this Court rejects this argument and finds that no due process right of [Officer Smith] was violated by opposing and denying a Motion for Summary Judgment Reinstatement, when at the time of termination, cause existed for [Officer Smith's] termination. The subsequent ruling by Chancellor Williams does not affect the fact that cause existed at the time of termination.

[Officer Smith's] counsel continues to argue the issue of timing in this case, alleging that the [Board] must rely on the evidence available to the Sheriff some three years after the termination of Smith, after Chancellor Williams issued his opinion, in determining whether the termination of Smith complied with Section 1303. This court rejects that argument.

According to Section 1304 of the Policies and Procedures Governing the Operation of the Civil Service System for the [Department] states "A request to [the] Board for a hearing may be made in writing within ten (10) days of the Sheriff's notification of charges or causes. The Board shall grant a hearing not more than thirty (30) days from the date of the receipt of the written request." Furthermore T.C.A. § 38-8-305(a) states "A police officer who is dismissed, demoted, suspended or transferred for punitive reasons, may within a reasonable amount of time following such action, as set by the officer's agency, request a hearing. If such request is made in a timely manner, a hearing shall be held within a reasonable amount of time set by the agency. The hearing shall be set no later than fourteen (14) calendar days following the date of request, unless a later date is acceptable to the police officer."

The record does not give this court a history of the requests to postpone the [Board] hearing or whether or not the postponement was ever opposed. However, this becomes irrelevant upon review of the above referenced Section 1304 and T.C.A. 38-8-305. It is simply not

contemplated by the applicable law that the hearing would not be conducted in a timely manner and therefore the Sheriff and the [Board] would be required to rely on evidence that may or may not be available some three years after the termination of an employee to determine if the termination was proper. It is an unreasonable burden to place on the [Department] to be bound to this type of hindsight. The issue instead is whether or not the termination was proper given the evidence an[d] basis for the termination at the time of the termination, not some three years later after Chancellor Williams issued his opinion.

We disagree with the trial court on this issue. Certainly, if the Board hearing had been held prior to Officer Smith's September 2012 request for reinstatement following the Roane County Chancery Court's August 2012 judgment, the only issue before the Board would have been the initial termination of Officer Smith's employment. However, for whatever reason that the agreed postponements of the Board hearing occurred, by the time of the August 2013 Board hearing, the Roane County court had entered its judgment and Officer Smith had requested reinstatement. At that point in time, a second decision made by Sheriff White was before the Board: his September 2012 refusal to reinstate Officer Smith despite the removal, by final judicial order, of the sole just cause for the initial termination. Likewise, the decision of the Board to deny Officer Smith's motion for reinstatement during the Board hearing was also before the trial court.

To persist in denying Officer Smith the remedy of reinstatement in the face of no substantial and material evidence supporting the continued denial of his property right in civil service employment yields an arbitrary and capricious result. *See City of Memphis v. Civil Serv. Comm'n*, 238 S.W.3d at 243 ("A decision unsupported by substantial and material evidence is arbitrary and capricious."). We therefore remand this case to the trial court for entry of an order directing Respondents to reinstate Officer Smith to his employment with the Department. We will address the issue of back pay and other remedies in a subsequent section of this opinion.

## VII. Remaining Due Process Issues

Officer Smith presents three additional issues regarding the alleged denial of his due process rights during the Board hearing. He asserts that the trial court erred by declining to find that the Board violated the Due Process Clause, Tennessee Code Annotated § 38-8-305(b), and applicable Civil Service Rules by denying him an opportunity to present evidence during the hearing. He further asserts that the trial court erred by declining to find that the Board violated the Due Process Clause, Tennessee Code Annotated § 38-8-304, and applicable Civil Service Rules by improperly relying

upon the agreed delays in scheduling the Board hearing and Officer Smith's failure to apply for re-employment as grounds to uphold his employment termination.

As to the Board's purported reliance on the hearing delay and Officer Smith's failure to reapply, our review of the transcript, quoted in part in the preceding section of this Opinion, reveals that the Board members considered these issues only insofar as they determined not to consider the Roane County Chancery Court's August 2012 judgment and to deny Officer Smith's motion for reinstatement. Inasmuch as we have determined that the trial court erred in affirming the Board's reasoning and conclusion regarding reinstatement, we determine the issues concerning Board members' reliance on the hearing delay or Officer Smith's lack of reapplication to be pretermitted as moot.

Moreover, upon thorough review, we agree with the trial court that under the circumstances occurring during the Board hearing, the Board did not violate Officer Smith's due process rights by denying him an opportunity to present evidence. Respondents note that the Board, as a nonjudicial body, has never adopted the Tennessee Rules of Civil Procedure. Regarding application of judicial rules to nonjudicial bodies, this Court has explained:

> [W]e hold that neither the technicalities of the Civil Rules of Procedure nor the common law rules of evidence necessarily apply before nonjudicial bodies unless the rules of that body so require. See *Big Fork Mining Company v. Tennessee Water Quality Control Board,* (1981 Tenn. App. M.S.) 620 S.W.2d 515; *L & N Railroad Company v. Fowler,* (1954) 197 Tenn. 266, 271 S.W.2d 188. We believe the rules to be applied by reviewing Courts to these less than legally formal hearings must also be less than those required in legally formal hearings. In reviewing such evidence we are to be guided by a sense of fair play and the avoidance of undue prejudice to either side of the controversy and whether in our opinion the action of the hearing Board in admitting or excluding evidence was unreasonable or arbitrary. See *Consolidated Edison Company v. N.L.R.B.,* (1938) 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

*Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 388 (Tenn. Ct. App. 1983), *perm. app. denied* (Tenn. Aug. 22, 1983). We note, however, that we must review the record of the Board hearing according to the requirement that "the police officer and the officer's agency shall be afforded the opportunity to present evidence and to examine and cross-examine witnesses," *see* Tenn. Code Ann. § 38-8-305(b), as well as the evaluation of "whether the employee has been afforded the procedural safeguards mandated by the gravity of the deprivation" of a property right in continuing employment, *see Case*, 98 S.W.3d at 173.

Concerning the rights to be afforded parties appearing before the Board, section 1307(2) of the Department's Policies and Procedures provides:

> (2)     The parties shall have the right to appear before the Board in person and be represented by counsel.  Counsel must be designated, by written notice, as the representing attorney of a party, and must be a licensed lawyer or other person certified by the Board to appear before it on behalf of others.  The parties shall have the right to call witnesses to testify in their behalf and to present any material evidence bearing on the issues to be decided by the Board.  Rules of evidence developed by the judicial system for use in the Courts of Tennessee shall not be involved in any hearing before the Board to exclude or limit testimony or evidence [that] will, in the opinion of the Board, aid it in rendering a decision on the issues brought before it.

The trial court found that Officer Smith had waived his right to testify before the Board when his counsel moved for involuntary dismissal at the close of Sheriff White's proof and then made an offer of proof that Officer Smith was innocent of any child abuse. At the close of Sheriff White's proof before the Board, Officer Smith's counsel stated:

> I need to ask for a point of clarification.  And I know that the rules of civil procedure and the things that we lawyers are familiar with doing in court don't apply here but there is a motion that is normally filed by the responding party at the time that the prosecuting party finishes their proof, which is where we are now.  And it is a motion to render a judgment based on that proof without hearing any other evidence.  If this body would entertain that motion now, based upon the sheriff's testimony, we agree that the DCS indication of Mr. Smith as an alleged child abuse perpetrator was not any longer just cause for termination.  And based upon that testimony from the sheriff, we don't need to put on any evidence.  And Mr. Smith would get up and deny that anything happened.  And then the next legal question for you all to decide is whether it would be proper for [Sheriff White's counsel], if we went forward and denied those accusations, whether it would be proper for him to bring in witnesses, or the only witness, the young lady who was a child at the time that made these allegations who is here in the room, in what we call rebuttal.  I think the Court would not allow that.  And would say you could have brought that evidence in . . . your case and you didn't and it wouldn't be proper rebuttal. The first thing I would like to ask for on clarification is simply now that you have heard the proof and the sheriff's admission of the chancellor

reversing that DCS finding that there is no longer just cause for termination based on that. And Mr. Smith should be reinstated on that basis without having to go forward and put on any proof.

Following a response during which Sheriff White's counsel clarified Sheriff White's testimony that he believed just cause existed at the time of termination, Officer Smith's counsel continued in relevant part:

The dispute now is what time do you look at the facts. Do you look at the facts as they existed in 2009 when the sheriff made this, I would suggest, very reasonable decision. Very reasonable back at that time, we can't keep this man on. Look what [DCS] has told us. He can't be involved with the [child protective investigation] team, he can't be around children. And we are a sheriff's department and of course we can't keep him around. From the lens and looking at the facts at the time of the decision in 2009 it was a very reasonable decision. I wouldn't argue with it. The question is today. The question is today is there just cause. . . . And it is on that basis that we move for reinstatement now at the close of the department's proof.

Subsequent to Officer Smith's counsel's motion, the Board conducted a discussion during which members made it clear that they did not perceive their role as one of determining Officer Smith's guilt or innocence of the allegations underlying DCS's indicated classification. As noted in the preceding section of this Opinion, Board members decided to consider only the situation as it was at the time of Sheriff White's initial decision to terminate. They excluded consideration of the Roane County Chancery Court's August 2012 judgment reversing the DCS indication and of Sheriff White's denial of Officer Smith's September 2012 request for reinstatement. When it became clear that the Board was not going to consider the court judgment reversing the classification and was preparing to render a decision affirming the termination, Officer Smith's counsel proffered the following objection and offer of proof:

Let me please remind this Board that we are discussing my motion to reinstate him at the close of the Department's proof. You haven't heard from Mr. Smith. You have prejudged the outcome of the case now by a unanimous vote without hearing his proof. And this was just on my motion. If you don't want to hear his denial that he did any of these things, that is fine. We make the offer of proof that he would testify that he did not commit any act of child abuse against this child . . . or any other child. And he is innocent and he would testify to that today. If that wouldn't change the outcome of your ruling, then we make that as an offer of proof at this time.

Ms. Roberts summarized the Board members' collective response to this offer of proof as follows in relevant part:

> Why do we need him to testify when we have the letter saying that he was not found guilty? See, we are not charging him. We are not saying he is guilty. We are saying that we stand by his termination on the basis of the information that the sheriff's department had.

The Board then voted to uphold Officer Smith's employment termination and refuse his motion for reinstatement without hearing any further evidence.

In its final judgment, the trial court concluded regarding this issue:

> This court finds that in fact the Board did not deny [Officer Smith] the right to be heard before the Board, but rather the attorney for [Officer Smith] made a conscious and deliberate choice to move the Board for a judgment at the close of the Sheriff's proof. When the Board issued a judgment at the close of the Sheriff['s] proof, counsel for [Officer Smith] then made an offer of proof that [Officer Smith] would testify that he was innocent of any alleged child abuse. Whether or not it was an error on the part of [Officer Smith's] counsel to attempt to use a mechanism of civil procedure that did not apply before the [Board] is not at issue here. What is it at issue is whether the Board granted [Officer Smith] his right under Section 1307. This court finds that the [Board] complied with Section 1307.
>
> [Officer Smith] had the right to appear in person, which he exercised. [Officer Smith] had the right to be represented by counsel, which he exercised. [Officer Smith] had the right [to] cross-examine witness[es] brought against him, which he exercised. [Officer Smith] had the right [to] call witness[es] and/or testify on his own behalf, which did not occur simply because his own counsel requested a judgment at the close of the Sheriff's proof and then made an offer of proof that Smith would testify that he was innocent of child abuse. [Officer Smith's] due process rights for an opportunity to be heard before [the Board] were therefore not violated.

We agree with the trial court that as events unfolded at the close of the Board hearing, Officer Smith's due process rights were not violated by denial of his opportunity to present evidence. Officer Smith's counsel acknowledged during his offer of proof that

the testimony Officer Smith would have presented was to the effect that he was innocent of child abuse allegations. The Board, in considering solely Sheriff White's initial decision to terminate Officer Smith's employment and only the information Sheriff White had at that time, made a decision to consider the DCS indication as just cause for termination and not to consider whether just cause existed for Sheriff White's subsequent refusal to reinstate Officer Smith following judicial reversal of the indication.

In his motion for what in effect would be an involuntary dismissal under Tennessee Rule of Civil Procedure 41.02(2),[6] Officer Smith's counsel conceded that "[f]rom the lens and looking at the facts at the time of the decision in 2009 it was a very reasonable decision." Counsel did, in effect, waive further proof regarding the 2009 decision. Because we have determined that the Board, and in turn the trial court, reached an arbitrary and capricious decision in declining to consider the situation as it existed at the time of Sheriff White's September 2012 denial of Officer Smith's request for reinstatement, we further determine the issue of any additional evidence Officer Smith could have presented to be pretermitted as moot.

## VIII. Claim for Damages

Finally, we consider Officer Smith's claim for damages in light of our determination that this case should be remanded for entry of an order reinstating Officer Smith's employment with the Department. Officer Smith argues that in addition to reinstatement, he should be entitled to back pay, including the value or cost of all benefits. *See Hoback*, 492 S.W.3d at 259 ("Tennessee courts have recognized that an employee who is found to be wrongfully discharged 'can be made whole through an award of back pay and either reinstatement or, in certain circumstances, front pay'") (quoting *Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 432 (Tenn. Ct. App. 1992)).

Discerning no error in affirmance of the original termination decision, we determine that damages for back pay and benefits should be awarded beginning from the point at which Officer Smith requested reinstatement based on the Roane County Chancery Court's judgment reversing the DCS indication that had been the just cause for his employment termination. Sheriff White acknowledged receiving and rejecting this request, and Respondents have not disputed Officer Smith's assertion that the request was dated September 1, 2012. We therefore direct the trial court on remand to determine an

---

[6] Tennessee Rule of Civil Procedure 41.02(2) provides in relevant part:

> After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

award of back pay, inclusive of the value of benefits, dating from September 1, 2012, through the date of reinstatement. Noting that in his pleadings, Officer Smith requested an award of expenses for recertification as well, we further direct that on remand, the parties may present evidence regarding whether an award to Officer Smith for costs of recertification and training is warranted.

Officer Smith has requested the right to petition for front pay in the event that reemployment with the Department is not feasible. On remand, the trial court should consider such a petition if Respondents present sufficient evidence that it would not be feasible to reinstate Officer Smith's employment. *See Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 435 (Tenn. Ct. App. 1992), *perm. app. denied* (Tenn. Sept. 14, 1992) ("Reinstatement is an equitable remedy . . . and front pay is an equitable substitute for reinstatement.") (internal citations omitted).

Officer Smith also has posited that if this Court were to grant relief predicated on constitutional grounds, he should be awarded reasonable attorney's fees for his representation at trial and on appeal, pursuant to 42 U.S.C. § 1988(b). *See generally Wimley v. Rudolph*, 931 S.W.2d 513, 517 (Tenn. 1996) (holding that a plaintiff may "seek attorney fees under Section 1988 in a petition for judicial review when the petition seeks relief from the wrongful denial, under color of state law, of rights, privileges, or immunities secured by the federal constitution and laws."). However, because we have determined that Officer Smith's due process rights were not violated and have granted relief only according to the non-constitutional grounds provided for certiorari review of administrative decisions in Tennessee Code Annotated § 4-5-322(h), we deny Officer Smith's request for attorney's fees incurred at trial and on appeal.

## IX. Conclusion

For the reasons stated above, we reverse the trial court's affirmance of the Board's affirmation of Sheriff White's refusal to grant Officer Smith's request for reinstatement and the Board's subsequent denial of Officer Smith's motion for reinstatement. We affirm the trial court's affirmance of the Board's upholding of Sheriff White's initial decision to terminate Officer Smith's employment. This case is remanded to the trial court for (1) entry of an order directing Respondents to reinstate Officer Smith's employment with the Department; (2) determination of an award of back pay, including benefits as applicable, spanning the time period beginning with Officer Smith's September 1, 2012 request to Sheriff White for reinstatement and ending with the effective date of reinstatement; and (3) determination of whether an award of expenses related to recertification and training is warranted. In addition, if Officer Smith files a petition for front pay on remand, the trial court should consider such an award if Respondents present sufficient evidence that it would not be feasible to reinstate Officer

Smith's employment.  Officer Smith's request for an award of attorney's fees incurred at trial and on appeal is denied.  Costs on appeal are taxed one-half to the appellant, Carl C. Smith, II, and one-half to the appellees, Anderson County Sheriff Paul White and the Civil Service Board of the Anderson County Sheriff's Department.

_____

THOMAS R. FRIERSON, II, JUDGE