IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 2, 2025 Session

## MADISON COUNTY, TENNESSEE v. VATISHA EVANS-BARKEN

**Appeal from the Chancery Court for Madison County**
**No. 82659     Joseph T. Howell, Judge**

_____

### No. W2024-01813-COA-R3-CV

_____

In this appeal, an employee of the Madison County Sheriff's Department challenges the termination of her employment on the ground that she lacked a required certification to serve as a police officer after a psychological examiner deemed her not qualified to hold her position. The local civil service board initially upheld the termination, but that decision was vacated by the trial court, and the matter remanded. On remand, the local civil service board disapproved of the termination and reinstated the officer. The matter was appealed once again to the trial court, where a different judge held that the board's decision was based on improper procedure, unsupported by substantial and material evidence, and arbitrary and capricious. We reverse the decision of the trial court and reinstate the decision of the local civil service board.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which CARMA DENNIS MCGEE, and JEFFREY USMAN, JJ., joined.

Brad W. Hornsby, Murfreesboro, Tennessee, for the appellant, Vatisha Evans-Barken.

Nathan D. Tilly and James I. Pentecost, Jackson, Tennessee, for the appellee, Madison County, Tennessee.

### OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is the second appeal in this case. *See generally **Evans-Barken v. Madison***

***Cnty. Tenn.***, No. W2020-01101-COA-R3-CV, 2022 WL 1487773 (Tenn. Ct. App. May 11, 2022) ("***Evans-Barken I***").[1] Relevant to this appeal, in 2007, Appellant Vatisha Evans-Barken ("Appellant") was hired by the Madison County Sheriff's Department ("the Sheriff's Department"), a division of Appellee Madison County, Tennessee ("Appellee"). Appellant eventually attained the rank of Sergeant and was certified under the Peace Officer's Standards Training ("POST") criteria. In 2014, Appellant asked to be placed on medical leave. After exhausting her vacation days and earned time off, she requested additional leave under the Family Medical Leave Act ("FMLA"). The Sheriff's Department eventually terminated her employment on September 2, 2014, on the grounds that she had exhausted her FMLA leave and not provided a doctor's opinion that she could not return to work. Appellant appealed to the Madison County Sheriff's Department Civil Service Commission ("the Commission"). During the hearing, Appellant's counsel presented a doctor's note excusing Appellant from work and noting that Appellant had been assessed with, among other issues, "PTSD."[2] Appellant also gave a statement in the course of the Commission proceedings that she took medical leave in part because it was not safe for the citizens of Madison County for her to be serving as a police officer at that time and that she was not in a position to be carrying a weapon. The Commission reversed the termination of Appellant's employment and ordered that Appellant be reinstated. The Madison County Chancery Court ("the trial court") affirmed the decision of the Commission in February 2016.

Because Appellant had not acted as a police officer in over six months, then Sheriff John Mehr ("Sheriff Mehr") determined that Appellant was required to undergo physical and psychological testing before she could return to a POST-certified police position. As such, the Sheriff's Department retained Dr. Emily Davis, a licensed psychological examiner,[3] to perform a psychological exam on Appellant. Prior to the test, Dr. Davis requested a copy of the prior Commission hearing transcript, but not Appellant's employee records. The March 30, 2016 testing included a ten to fifteen minute conversation and an intake form in which Dr. Davis asked Appellant about any issues she was experiencing with anxiety, hallucinations, impulse control, alcohol, addictions, anger management, mania, gambling, physical abuse, psychosis, drugs, and "psychological trauma." Appellant responded that she only suffered from depression due to the loss of her job. The rest of the examination consisted of computer-generated test questions that spanned several hours.

---

[1] Although ***Evans-Barken I*** is a memorandum opinion, it may be cited in a related case. *See* Tenn. R. Ct. App 10.

[2] "PTSD" is an initialism for Posttraumatic Stress Disorder, a "*DSM-IV* psychiatric disorder characterized by an acute emotional response to a traumatic event or situation[.]" *See Mosby's Dictionary of Medicine, Nursing & Health Professionals* 1433 (9th ed. 2013).

[3] Dr. Davis holds master's degrees in Education: Curriculum and Instruction and Counseling: Vocational Rehabilitation. Her doctorate degree is in Education with a focus on counseling and personnel services. Dr. Davis had performed tests for new hires and current employees of the Sheriff's Department for a number of years.

Following the conclusion of the exam, Dr. Davis generated a report. Therein, Dr. Davis noted that Appellant "denied any history of anxiety, impulse control, hallucinations, sexual abuse, psychosis, alcohol, physical trauma, addictions, anger management, mania, gambling, physical abuse, drug problems, or psychological trauma." Appellant was administered three tests, some of which appear to have contained multiple components. The Minnesota Multiphasic Personality Inventory ("MMPI") Clinical Scales "indicated no pathology; all scales were within normal limits." The MMPI Content Scales and Content Component Scales were also within normal limits. The latter test scored Appellant for multiple issues, such as fear, depression, anger, cynicism, antisocial practices, impatience, and low self-esteem. The MMPI Personality Psychopathology Five test scored Appellant high for aggressiveness. The report also flagged as concerning some answers by Appellant that might indicate "dysfunctional attitudes or negative behavior in employment situations."

The Matrix-Predictive Uniform Law Enforcement Selection Evaluation Inventory also "indicated no areas of great concern, although her [] score was a bit high on the 'Sexually Offensive Conduct' scale." The M-Pulse Inventory Empirical Scales, however, showed high scores for negative self-issues, negative emotions, egocentrism, negative perceptions of law enforcement, inappropriate attitudes about the use of force, suspiciousness, unethical behavior, negative views of department leadership, and amorality, with problematic scores for a number of other components. The report noted that these scores could indicate, inter alia, that Appellant thinks that she "is above the rules," that Appellant is suspicious and distrustful, particularly of leadership, and that Appellant has strong attitudes that condone the use of force.

Finally, the California POST Patrol Officer Personality Based Competencies detailed the following areas of concern: social incompetence, lack of teamwork, rigidity, lack of integrity/ethics, emotional instability/stress tolerance, passivity/submissiveness, and poor service orientation. In particular regarding these concerns, the report noted that Appellant "has opinions regarding morality and ethical situations that seem questionable[.]"

Based on these tests, Dr. Davis gave the following summation:

> [Appellant's] response profiles on the MMPI-2's clinical and content scales did not indicate any psychopathology. However, her responses and response profiles on the Matrix-Predictive Uniform Law Enforcement Selection Evaluation inventory (which predicts a potential law enforcement candidate's success in law enforcement work) indicated some areas of significant concern about her potential as a successful law enforcement employee. The areas of concern, based on her own responses on the M-Pulse Empirical scales, and on the California POST Competencies scales do suggest, in this examiner's opinion, that [Appellant's] ability to competently

perform the essential functions of a law enforcement career is questionable, and that her work performance would be unsatisfactory to the department if she were employed in a law enforcement capacity.

As a result, on March 1, 2016, Dr. Davis filled out a Confirmation of Psychological Evaluation from the Tennessee Peace Officer Standards and Training Commission ("the POST Commission") in which she stated that Appellant was not qualified to be certified under POST standards. Dr. Davis then met with Sheriff Mehr to discuss the results and provided Sheriff Mehr with a copy of her Confirmation form and report.

Sheriff Mehr terminated Appellant's employment effective April 5, 2016, citing the failed psychological exam and Appellant's resulting inability to serve in a POST position.

Appellant once again appealed the termination, this time to the newly constituted Civil Service Board ("the Board"),[4] and the matter was heard in April 2017. As our prior Opinion explained,

> The [Commission] [] heard testimony from Appell[ant]'s expert psychologists, Megan L. Avery, Ph.D., and Neil E. Aronov, Ph.D. Both Dr. Avery and Dr. Aronov disputed Dr. Davis' methods, qualifications, and expertise. Dr. Avery testified that she performed a fitness-for-duty evaluation of Appellee on October 5, 2016. Based on that evaluation, Dr. Avery opined that Appellee did not have a psychiatric problem and exhibited "no symptoms impairing her ability to perform her job." Dr. Aronov testified that Dr. Davis' evaluation techniques deviated significantly from accepted methodology and that the brief interview Dr. Davis had with Appellee was insufficient to form a valid opinion as to Appell[ant]'s fitness for duty. Dr. Aronov further testified that the evidence Dr. Davis provided to him for review excluded a test that Dr. Davis performed but omitted from her report. Dr. Aronov explained that his review of the missing test caused him no concern regarding Appell[ant]'s fitness for duty, but he testified that the standard practice is to disclose all parts of an evaluation regardless of whether the information supported the examiner's conclusion or was considered by the examiner in reaching his or her conclusion.

*Evans-Barken I*, 2022 WL 1487773, at *1.

Dr. Davis, in contrast, testified that she had been performing POST certification psychological exams in the same manner for a number of years, that her methodology was sound, and that her failure to approve Appellant's psychological exam was based on a diagnosis for PTSD. According to Dr. Davis, Appellant "had given sworn testimony that

---

[4] As noted *infra*, the Board was created by a 2015 private act.

- 4 -

she had problems with PTSD" in the prior hearing before the Commission, which contradicted her report on the intake form that she had not suffered from "psychological trauma." Dr. Davis said that she did not discuss this purported "inconsistency" with Appellant because it went against her training to "badger[] her or . . . mak[e] her think that I thought she had not told the truth." Dr. Davis conceded that she was not qualified to diagnose Appellant with PTSD.

There was somewhat confusing testimony about whether Appellant was decertified by the POST Commission following Dr. Davis's psychological exam. In any event, no proof was presented that Appellant was served with notice of decertification by the POST Commission at any time following the March 2016 psychological exam.[5] Appellant testified without dispute that she was currently POST certified and holding a position requiring POST certification with another police department.

On January 18, 2018, the Board entered an order affirming the Sheriff's Department's decision to terminate Appellant. As the decision explained,

> Neither Dr. Davis' qualifications, the evaluation of the [Appellant] which she performed, nor the manner in which she performed it are at issue before this Board. Our sole task is determining whether the [Appellant's] termination by Sheriff Mehr was one of "just cause". Our task is not, however, with the benefit of information unavailable to Sheriff Mehr at the time of the termination, to critique his decision as if he were privy to such. There was no evidence introduced which showed that either prior to or at the time of the termination, that Sheriff Mehr had any reason whatsoever to question Dr. Davis' credentials or her work.

Appellant thereafter filed a petition for judicial review with the trial court. In July 2020, the trial court ruled that the hearing before the Board was intended to be a de novo hearing and that the Board's decision to consider only the information available to the Sheriff's Department at the time of the termination violated Appellant's right to due process. As a result, the trial court remanded the matter to the Board, directing the Board to consider all of the evidence in the record, not just the evidence that was before Sheriff Mehr at the time of the termination.

---

[5] The technical record contains portions of the February 2017 deposition of Brian Grisham, the Director of the Tennessee Law Enforcement Training Academy and the secretary of the POST Commission. He testified that Appellant's POST status at that time was "inactive" and that when action is taken against an officer's POST certification, the officer is "notified" so that the POST Commission can consider an appeal of that decision or a request for a waiver. Mr. Grisham noted that Appellant's failed March 2016 psychological exam was in Appellant's POST record, but he did not testify that the POST Commission ever provided any written notification to Appellant that she was decertified. This deposition testimony was not presented to the Board by either party, and Mr. Grisham was not called to testify.

Appellee subsequently appealed to this Court. Because we concluded that the trial court's order remanding the case meant that the matter was ongoing and non-final, we dismissed the appeal for lack of subject matter jurisdiction. *See id.* at *6.

On remand, the Board did not consider new evidence, but only the previously submitted proof. Ultimately, by order of June 21, 2023, the Board ruled that Appellant should be reinstated, explaining,

> After reconsideration of all of the proof introduced at the hearing on the issues as for the termination, this Board, based on the entire testimony of all the witnesses and utilizing a de novo standard of review, we do find that the testimony and proof offered by Dr. Avery and Dr. Aronov was more credible and reliable, and that the greater weight of the proof in our consideration supports this Board's disapproval of [Appellant's] termination.

Appellee filed a petition for judicial review of this ruling with the trial court. By order of August 2, 2024,[6] the trial court ruled that the Board's decision was arbitrary and capricious. Therein, the trial court found that Appellant went on leave due to anxiety and "being diagnosed with [PTSD.]" The trial court further ruled that Sheriff Mehr had just cause to terminate Appellant based on her failed psychological exam. As the trial court explained, the credibility of Dr. Davis's conclusions was not at issue and Sheriff Mehr was required by Tennessee law to abide by her determination. Rather than seek to undermine the credibility of Dr. Davis's conclusion in an appeal to the Board, the trial court ruled that Appellant was required to appeal her "POST certification status" through the POST Commission; the trial court noted, however, that there was no proof that Appellant ever challenged Dr. Davis's decision in that manner. Thus, Sheriff Mehr "could justifiably rely on Dr. Davis's determination that [Appellant] was not qualified for POST-certification." According to the trial court, Sheriff Mehr was not required to investigate whether Dr. Davis's evaluation was completed in a certain manner or to seek a second evaluation. Rather, he was bound by Dr. Davis's determination. So the Sheriff's Department's decision to terminate Appellant was upheld and the reinstatement ordered by the Board reversed. Although Appellant filed a motion to alter or amend the trial court's judgment, it was denied, and this appeal followed.

## II. ISSUES PRESENTED

Appellant presents a single issue in this appeal, which we restate as follows: whether the trial court erred in overturning the decision of the Board to reinstate Appellant's

---

[6] By this time, the original trial judge had retired, and Chancellor Steve W. Maroney had taken office. Because Chancellor Maroney represented Appellee in the prior proceedings, he entered an order of recusal on November 7, 2023. Although the record does not contain an order of appointment, Judge Joseph T. Howell presided over this matter in the trial court for the remainder of the proceedings.

employment.

### III. STANDARD OF REVIEW

Pursuant to Tennessee Code Annotated section 27-9-114(b), "[j]udicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act [("the UAPA")], § 4-5-322." Pursuant to section 4-5-322(h):

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) . . . . (B)(i) Unsupported by a preponderance of the evidence in light of the entire record, if the administrative findings, inferences, conclusions, or decisions were made by a board, council, committee, agency, or regulatory program created pursuant to chapter[] . . . 27[.]
> (ii) In determining whether the administrative findings, inferences, conclusions, or decisions are supported by a preponderance of the evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The trial court's review is therefore "narrow and deferential" to the agency decision. *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 668 (Tenn. 2016). The standard of review "reflects the general principle that courts should defer to decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise." *Id.* at 669. "Courts do not review questions of fact de novo and, therefore, do not second-guess the agency as to the weight of the evidence." *Id.* (citation omitted). Indeed, the court is not permitted to substitute its judgment for that of the agency. *Id.* (citing Tenn. Code Ann. § 4-5-322(h)(5)). Moreover, the court's review is confined to the record, except to show procedural irregularities. Tenn. Code Ann. § 4-5-322(g). *But cf.* Tenn. Code Ann. § 4-5-322(e) ("If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court."). This Court "applies the same limited standard of review as the trial court." *StarLink Logistics*, 494 S.W.3d at 669.

When tasked with reviewing an agency decision under section 4-5-322(4) or (5), we have explained the three-step analysis required of the reviewing court as follows:

> First, the court must determine whether the commission has identified the appropriate legal principles applicable to the case. Second, the court must carefully examine the commission's factual findings to determine whether they are supported by substantial and material evidence. Third, the court must examine how the commission applied the law to the facts.

*Miller v. Civil Serv. Comm'n of Metro. Gov't of Nashville & Davidson Cnty.*, 271 S.W.3d 659, 664 (Tenn. Ct. App. 2008) (citation omitted). Tennessee courts have also provided significant guidance as to how our courts should determine whether an agency decision is arbitrary and capricious:

> "A decision of an administrative agency is arbitrary or capricious when there is no substantial and material evidence supporting the decision." *StarLink Logistics*, 494 S.W.3d at 669 (citing *Pittman v. City of Memphis*, 360 S.W.3d 382, 389 (Tenn. Ct. App. 2011); *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. Ct. App. 1993)); *see also Watts v. Civ. Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980) ("Whether or not there is any material evidence to support the action of the agency is a question of law to be decided by the reviewing court upon an examination of the evidence introduced before the agency."). "[S]ubstantial and material evidence" is "less than a preponderance of the evidence and more than a 'scintilla or glimmer' of evidence." *StarLink Logistics*, 494 S.W.3d at 669 (citation omitted) (quoting *Wayne Cnty.* [*Tenn. Solid Waste Disposal Control Bd.*], 756 S.W.2d [274,] 280 [(Tenn. Ct. App. 1988)]). "A decision with evidentiary support can be arbitrary or capricious if it amounts to a clear error in judgment," *id.* at 669 (citing *City of Memphis v. Civ. Serv. Comm'n of Memphis*, 216 S.W.3d 311, 316 (Tenn. 2007)), and "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion," *id.* at 669–70 (alteration in original) (quoting *Civ. Serv. Comm'n of Memphis*, 216 S.W.3d at 316).

*Moss v. Shelby Cnty. Civ. Serv. Merit Bd.*, 665 S.W.3d 433, 441 (Tenn. 2023).

### IV. ANALYSIS

The termination of Appellant is governed in this case by the Madison County Sheriff's Civil Service Law of 2015, Priv. Ch. No. 6, H.B. 1385 ("the Act"). Under the Act, most full-time employees of the Sheriff's Department are among the "classified

service." ***Id.*** § 1.2. Moreover, the Act provides for the creation of a Civil Service Board, whose duties include the responsibility to "conduct hearings and establish just cause in appeals of: . . . terminations of classified employees as defined by this act[.]" ***Id.*** § 1.7. The Act further provides as follows:

> (a) No person holding any classified position of employment shall be discharged from the service of the department or demoted except for just cause, and it is expressly intended that engaging in any political activity or refusing to engage in any political activity shall not be just cause for discharge, suspension, or demotion of any employee holding a classified position.
> (b) All classified employees discharged or demoted shall have the right to be heard by the Civil Service Board in his or her own defense, in person or by counsel, and the action of the sheriff in discharging or demoting such person shall be subject to the approval or disapproval of the Civil Service Board. If the Civil Service Board approves the discharge or demotion, the decision may be appealed to the court having jurisdiction. If discharge or demotion is disapproved by the Civil Service Board, the employee shall be reinstated to the position with full pay and rights from the day of discharge or demotion.

***Id.*** § 1.18.

Appellee contends that Sheriff Mehr had "just cause" under the Act to terminate Appellant's employment because Appellant "failed her POST required psychological examination." A review of the law surrounding POST is therefore helpful to our analysis. The General Assembly created the POST Commission to, among other things, establish uniform standards for the employment and training of police officers and to issue certification to persons who are qualified for police work. Tenn. Code Ann. § 38-8-104(a). Tennessee Code Annotated section 38-8-106 provides a list of standards required of "[a]ny person employed as a full-time police officer," including that the officer

> [h]a[s] been certified by a Tennessee licensed health care provider qualified in the psychiatric or psychological field as being free from any impairment, as set forth in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) of the American Psychiatric Association at the time of the examination, that would, in the professional judgment of the examiner, affect the applicant's ability to perform an essential function of the job, with or without a reasonable accommodation.

Tenn. Code Ann. § 38-8-106(9). Not only are officers required to complete this psychological evaluation pre-employment, but veteran officers are likewise required to complete a new psychological evaluation "[a]fter a six month break in full-time law

enforcement service" or upon request, for good cause. Tenn. Comp. R. & Regs. 1110-02-.03(2)(j).[7] Any person who knowingly employs a person who does not meet the minimum qualifications commits a Class A misdemeanor. Tenn. Code Ann. § 38-8-105(b).

Here, the undisputed facts demonstrate that Appellant performed the requested reexamination in March 2016, after which the examiner, Dr. Davis, concluded that she was not qualified to be certified under section 38-8-106(9). The trial court concluded that the Board violated the law when it failed to discuss whether Sheriff Mehr had "just cause" to terminate Appellant's employment due to Appellant's failed psychological exam. According to the trial court, the Board's focus on the "credibility" of Dr. Davis's report was outside the purview of the Board, as "POST-certification decisions may only be made by POST" and Appellant never initiated the proper appeals process to appeal any decertification under POST.

We agree with the trial court that the Board's order lacks detailed factual findings and legal conclusions. Tennessee Code Annotated section 4-5-314(c) provides that an agency's final order "shall include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order, including the remedy prescribed and, if applicable, the action taken on a petition for stay of effectiveness." *See also* Tenn. Code Ann. § 27-9-114(a)(1) ("Contested case hearings by civil service boards of a county or municipality which affect the employment status of a civil service employee shall be conducted in conformity with contested case procedures under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, part 3."). "The purpose of this requirement is to enable the trier of fact to determine the basis for which the administrative agency reached its decision, thereby safeguarding against arbitrary or untenable conclusions." ***Boyce v. Tenn. Peace Officer Standards & Training Comm'n***, 354 S.W.3d 737, 743 (Tenn. Ct. App. 2011) (quotation marks and citation omitted). We have held, however, that an agency's failure to comply with section 4-5-314(c) does not always "preclude judicial review[.]" ***Id.***; *see also* ***Consumer Advoc. Div. ex rel. Tenn. Consumers v. Tenn. Regul. Auth.***, No. M1999-01170-COA-R12-CV, 2001 WL 575570, at *4 (Tenn. Ct. App. May 30, 2001) ("Exactness in form and procedure is not required; rather, the findings based on the evidence need only be specific and definite enough so that a reviewing court may determine the pertinent questions of law and whether the agency's general findings should stand, particularly when the findings are material facts at issue.").

In this case, many but not all of the facts are undisputed. But the Board's reasoning is readily apparent from its order—that Dr. Davis's evaluation was not reliable and therefore could not serve as the basis for the termination of Appellant's employment. Moreover, this case originated ten years ago and has had multiple iterations before the Board without ever finally resolving the dispute between the parties. Under these

---

[7] Here, Appellee asserts that both requirements were met. Regardless, there is no dispute that Appellant underwent a psychological exam in March 2016 at the request of the Sheriff's Department.

circumstances, we conclude that finality supports soldiering on in this case despite the lack of detailed explanation for the Board's ruling.[8] We will therefore endeavor to review the record in this case while still giving the Board's decision the appropriate deference. *See Moss*, 665 S.W.3d at 442 ("We accord significant deference to a merit board's just cause determination.").

Turning first to the trial court's conclusion that Appellant's attack on Dr. Davis's conclusions was not proper in this proceeding, we must respectfully disagree. It is true that POST regulations provide for an appeals process when certification is denied. Specifically, Tennessee regulations provide that the POST Commission "shall deny certification to any officer required to comply with the certification provisions who fails to do so." Tenn. Comp. R. & Regs. 1110-02-.04(1). The regulations go on to provide for notification of the denial or revocation of certification:

> (a) Notice of Denial. The [POST] Commission shall, within thirty (30) days of denying an application for certification, or as soon as is reasonably practicable, serve written notice upon an affected officer and the employing agency specifying the reasons for denial of the application.
> (b) Notice of Suspension or Revocation. The [POST] Commission shall, within thirty (30) days of suspending or revoking certification, or as soon as is reasonably practicable, serve notice upon an affected officer and upon the law enforcement agency employing the officer, specifying the action taken, the officer's current status, and the remedies available. The [POST] Commission shall stay final action until the period for requesting a hearing expires.
> (c) Notice of Final Action. The [POST] Commission shall notify the officer and the law enforcement agency involved of the final action regarding suspension or revocation.

Tenn. Comp. R. & Regs. 1110-02-.04(3). Receipt of notice of revocation also triggers an officer's right to appeal to the POST Commission:

> Any law enforcement officer whose certification has been suspended or revoked may, within thirty (30) days of receipt of notice served by the [POST] Commission, request a hearing which shall be granted by the Commission. Upon receipt of such request, the [POST] Commission shall set a date, time, and place for hearing and serve notice, by certified mail, upon the affected law enforcement officer. The affected officer may appear, present information relevant to the proceedings, question those presenting information, and be represented by counsel. In the absence of a request for

---

[8] Neither party asks that this matter be prolonged further in order to allow the Board to correct its anemic findings.

- 11 -

hearing, the suspension or revocation will, without further proceedings, become final thirty (30) days after the initial notice.

Tenn. Comp. R. & Regs. 1110-02-.04(4).

The trial court found that Appellant presented no proof that "Dr. Davis's decision was ever challenged or overturned." Obviously, that conclusion is not entirely accurate, as Appellant has clearly challenged Dr. Davis's opinion in this matter and the Board overturned its initial decision in its final order. To the extent that the trial court meant that Appellant never challenged the POST Commission's decision to revoke her certification due to the failed psychological examination, we cannot agree. Instead, there was no proof that Appellant was ever notified by the POST Commission that her certification was in fact revoked. Indeed, the record contains no proof that the POST Commission ever actually revoked Appellant's certification as a result of the failed psychological exam.

During her testimony before the Board, Appellant was asked whether she had knowledge that her POST certification was revoked. Appellant generally denied having any knowledge that her POST certification was revoked due to the failed psychological exam in 2016. Instead, she testified that there was some question about her certification when her employment was first terminated in 2015,[9] but that her attorney resolved that issue when she was reinstated by the Commission.[10] Even setting aside this testimony, there is absolutely no proof that the POST Commission ever sent Appellant any notification of adverse action taken against her certification in 2016 or thereafter, citing Dr. Davis's psychological examination.[11] Importantly, evidence of any adverse action would have been

---

[9] There was some confusion due to Appellant's marital name change that resulted in her having two POST certification numbers. Appellant also testified that after she applied for other employment during the pendency of this case, she was told to check with the POST Commission to see "if she was still certified."

[10] Appellee cites the following testimony for their assertion that Appellant "personally testified that she was not POST-certified at the time of termination":

> Q. . . . [T]here was a point in time where you were not POST-Certified, correct?
> A. Yes. When I got terminated. Yes.

This testimony, however, does not clear up whether the termination Appellant is speaking of is the 2015 termination or the 2016 termination. Moreover, Appellant's earlier testimony clarifies that she was speaking of a time in 2015 when she was first wrongfully terminated. Even Appellee's counsel characterizes Appellant's testimony as that Appellant "knew she was decertified in the year 2015[.]" And Appellant further testified that if she had known that her POST certification was revoked, she would have "done something about that," and that "to [her] knowledge, [she] was certified."

[11] In response to this argument on appeal, Appellee takes issue with a July 2024 email Appellant submitted to the trial court in her motion to alter or amend in which an employee of the Tennessee Department of Commerce and Insurance expressly states that "[t]here has been no action taken against [Appellant's] POST Certification." Appellee asserts that this email is hearsay, was not submitted to the Board, and should not be considered. But to counter this evidence, Appellee points to the deposition

within the Sheriff's Department's control, as the POST regulations mandate that notification is sent not only to the officer but also to the employing agency. Tenn. Comp. R. & Regs. 1110-02-.04(3)(b). Appellee never submitted any proof to the Board that Appellant received the notification required by the regulations; her appellate rights, triggered as they are by "receipt of notice served by the [POST] Commission," were therefore never activated. Tenn. Comp. R. & Regs. 1110-02-.04(4). And we can only speculate as to why no action was apparently taken by the POST Commission in the manner provided by the applicable regulations.[12]

Certainly, if the POST Commission had revoked Appellant's certification based on the failed psychological examination and provided Appellant with the appropriate notice to trigger her appellate rights under the relevant regulations, questions regarding the soundness of Dr. Davis's conclusions would have properly been directed toward the POST Commission. And Appellant's failure to hold the required certification from the POST Commission would have constituted just cause for the termination of her employment. *See City of Memphis v. Civ. Serv. Comm'n of Memphis*, No. W2003-02799-COA-R3-CV, 2004 WL 3021120, at *7–8 (Tenn. Ct. App. Dec. 29, 2004) ("Although the actions by the Airport Authority in revoking Chief Moore's credentials are admittedly suspect, that decision cannot cloud the fact that, without these credentials, Chief Moore is unable to carry out his duties as an Air Crash Chief at the Memphis Airport. . . . The loss of the required credentials alone constituted substantial and material evidence on which the City could base Chief Moore's demotion."); *Wheeler v. City of Memphis*, 685 S.W.2d 4, 6 (Tenn. Ct. App. 1984) ("Although the Airport Authority acted upon the police board's suspension of the appellant's commission, and the Airport Authority's action was reviewable by the Civil Service Commission because it involved dismissal of an employee, it does not follow that the Civil Service Commission could therefore review the decision of the board in revoking appellant's commission to carry a firearm."). But there is simply no proof that this is what happened in this case. So it does not appear that the trial court was correct to conclude that Appellant's failure to appeal the loss of her POST certification was a bar to Appellant's claims in this case. Instead, this is the appropriate forum—and indeed the only forum—in which Appellant was permitted to attack Dr. Davis's conclusion that she was not qualified to serve in a law enforcement position.

---

testimony of Mr. Grisham, which was also not submitted to the Board. Because neither piece of evidence was submitted to the Board, neither may be considered by either the trial court or this Court. *See* Tenn. Code Ann. § 4-5-322(e) & (g). But even considering Mr. Grisham's testimony, as previously noted, his only testimony was that Appellant's status in 2017 was "inactive," rather than suspended or revoked.

[12] At the start of the Board hearing, Appellant's counsel was asked about any POST Commission proceedings and their result. Appellant's counsel explained that the POST Commission had chosen to take no action against Appellant until the conclusion of the Board's proceedings concerning her employment. No evidence of this was presented, however. Appellant's counsel later appeared to argue that the POST Commission's failure to act could have been due to the fact that Dr. Davis's conclusion was not based on the required DSM diagnosis. That argument is discussed, *infra*.

Still, even without Appellant's POST certification being formally revoked, there can be no question that one of the qualifications of employment to Appellant's former position was that Appellant be certified as free from impairment that would affect her job performance as described by section 38-8-106(9). Thus, the central question of this case remains: did the results of Appellant's March 2016 psychological examination provide just cause for the termination of her employment on the basis that Appellant did not meet the qualifications for employment under section 38-8-106(9)? As to this question, the parties diverge as to what evidence was properly considered by the Board. According to Appellee, the Board was required to view only the evidence that was before Sheriff Mehr at the time of the termination to determine whether he had "just cause" to terminate. Appellant asserts, however, that the Board was required to view all of the evidence presented.[13] In our view, this dispute is immaterial because under either standard, Sheriff Mehr lacked just cause to terminate Appellant's employment for failing to meet the minimum requirements of section 38-8-109(9).

Although the parties disagree about the scope of the evidence that could be considered by the Board, there can be no dispute that the Board's duty, at a minimum, was to determine whether just cause supported the termination of Appellant's employment. *See* Madison Cnty. Sheriff's Civ. Serv. L. 2015 § 1.18(a). As the Tennessee Supreme Court recognized,

> The term "cause" implies good cause which must be substantial; but, any reasonable, sufficient cause may be ground for dismissal, and the power to discharge is not limited to specific grounds. The term "cause" is construed to mean some substantial shortcoming which renders continuance in office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and sound public opinion recognize as good cause for removal.

*Moss*, 665 S.W.3d at 442 n.5 (quoting *Mitchell v. Elec. Empls.' Civ. Serv. & Pension Bd. of Metro. Gov't of Nashville & Davidson Cnty.*, No. M2018-00186-COA-R3-CV, 2019 WL 211921, at *9 (Tenn. Ct. App. Jan. 16, 2019)). Thus, the Board was not required to uphold the termination by Sheriff Mehr if he could articulate any basis whatsoever for his decision; rather, his decision must have been reasonable and sufficient. *Cf. Pylant v. Spivey*, 174 S.W.3d 143, 156 (Tenn. Ct. App. 2003) ("'[R]easonable' does not mean unlimited. The answer to the question of what is reasonable will vary according to the

---

[13] This was essentially the subject of the first appeal in this matter, after the trial court in the first judicial review ruled that the Board erred in refusing to consider all of the evidence under a de novo standard. *See* **Evans-Barken I**, 2022 WL 1487773, at *3–4. Because this Court ruled that it lacked subject matter jurisdiction over the appeal, however, that ruling was not evaluated by this Court and therefore is not the "law of the case" in this appeal. *See generally* **In re Bridgestone/Firestone**, 495 S.W.3d 257, 266 (Tenn. Ct. App. 2015) ("The law of the case doctrine generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case." (citation, quotation marks, and emphasis omitted)).

circumstances." (citations omitted)). Consequently, in order to determine whether the decision was reasonable, the Board was required to inquire into whether the decision was fair, proper, and according to reason. *See* Reasonable, *Black's Law Dictionary* (9th ed. 2009). This inquiry clearly involves some consideration of the facts underlying that decision, regardless of whether the Board was required to review the decision de novo or not.[14] *See also **Case v. Shelby Cnty. Civ. Serv. Merit Bd.***, 98 S.W.3d 167, 174–75 (Tenn.

---

[14] Interestingly, Tennessee Code Annotated section 38-8-305 suggests that a police officer who is dismissed "for disciplinary reasons" is entitled to at least one de novo hearing concerning his or her dismissal. *See* Tenn. Code Ann. § 38-8-305(d) ("The police officer shall also be given the opportunity to be represented by counsel at the hearing, unless such officer and agency are afforded, by regulation, the right to counsel in a subsequent de novo hearing."). But the statute further provides that its procedures "shall apply only to those agencies that now provide a property interest in employment for their police officers and that have no other established procedures for dealing with the dismissal, demotion, suspension or transfer for punitive reasons of police officers." *See* Tenn. Code Ann. § 38-8-309 (amended in 2023 without impact to the quoted language). Here, there has been no argument that this statute applies to the termination of Appellant's employment given the Act and the basis for the termination.

Instead, Appellant asserts that the Board was not limited to the information available to Sheriff Mehr at time of the termination of her employment based on this Court's opinion in ***Smith v. White***, 538 S.W.3d 1 (Tenn. Ct. App. 2017). In ***Smith v. White***, the employment of a sheriff's department officer was terminated after the Tennessee Department of Children's Services ("DCS") "indicated" the officer for child abuse, which indication was upheld upon administrative review. *Id.* at 4. The officer appealed the DCS determination to the chancery court and the termination of his employment to the relevant civil service board. While the civil service proceedings were pending, the chancery court reversed the DCS finding, ruling that the child abuse claim was "unfounded." *Id.* The officer then asked the sheriff to reinstate his employment, which request was denied. The civil service board thereafter affirmed the termination decision and the denial of reinstatement. The chancery court ultimately affirmed the board's decision. *Id.*

This Court upheld the termination against several due process challenges, including an argument that the officer was not given proper notice and that the officer was not provided a predetermination hearing. *Id.* at 18, 21. We further ruled, however, that there was no substantial and material evidence to support the denial of the officer's request for reinstatement when the basis for his termination was reversed. *Id.* at 24–25.

Appellant contends that this case stands for the proposition that the Board was required to consider not only the evidence available at the time of the termination, but also any later developed facts. In ***Smith v. White***, however, there were two inquiries: whether the initial termination was proper and whether the denial of reinstatement was proper. The officer did not appear to challenge the evidence that supported the initial determination; instead, he challenged that decision only on procedural grounds. Indeed, the opinion notes that the officer's counsel conceded that just cause existed at the time of the initial termination. *Id.* at 27. Thus, it was the reinstatement request that was lodged with the sheriff and denied by the civil service board that required the consideration of after-occurring evidence. And the Court held that in reviewing the request for reinstatement the civil service board was required "to consider the situation as it existed at the time of [the sheriff's] . . . denial of [the officer's] request for reinstatement[.]" *Id.* at 29. ***Smith v. White*** therefore does not stand for the proposition that the Board is required to consider evidence developed after the decision being challenged.

We note that other counties and municipalities have given their civil service boards more guidance. For example, in ***Logan v. Civil Service Commission of the City of Memphis***, No. W2007-00324-COA-R3-CV, 2008 WL 715226 (Tenn. Ct. App. Mar. 18, 2008), this Court noted that "when an employee appeals to the Civil Service Commission for a review of disciplinary action, section 248 [of the Memphis City Charter] provides that '[t]he burden of proof required to sustain the action of the City shall be by a

- 15 -

Ct. App. 2002) ("We accordingly hold that due process mandates that a classified civil service employee whose employment may be terminated only for cause must be afforded the opportunity to confront and cross-examine the witnesses against him at the post-termination hearing where the facts giving rise to termination are in dispute . . . .").

Turning to the information that was before Sheriff Mehr at the time of the termination, we conclude that it was not reasonable for Sheriff Mehr to rely on Dr. Davis's conclusions and report as a sufficient basis for determining that Appellant lacked the qualification necessary under section 38-8-106(9). As previously discussed, section 38-8-106(9) requires that an officer be certified as free from an impairment under the current DSM that would affect the officer's ability to perform an essential function of his or her job. But Dr. Davis's report affirmatively states that the relevant tests "did not indicate any psychopathology" and no DSM impairment of any kind was ever noted. And while Sheriff Mehr testified that he believed he had good cause to request a psychological examination from Appellant due to her doctors' statements that she had "stress, anxiety, . . . or PTSD problems," he did not testify that Dr. Davis explained that her conclusions were based on a PTSD diagnosis that affected Appellant's ability to perform her job. Neither does it appear that Dr. Davis testified that she explained to Sheriff Mehr prior to the termination of Appellant's termination that her conclusions were based upon Appellant's purported PTSD diagnosis.

Certainly, we agree that Sheriff Mehr himself was no psychological expert, nor was he required to be. But he did testify that he had ample experience with POST requirements.[15] And Dr. Davis's conclusions, as they were reported to Sheriff Mehr at the time of the termination, simply did not meet the express requirements of the relevant POST statute. So taking the evidence available to Sheriff Mehr at that time, we conclude that there was no reasonable basis to believe that Appellant was unqualified under section 38-8-106(9).

Of course, Dr. Davis testified at the hearing before the Board that her conclusions were in fact based on her knowledge that Appellant had been diagnosed with PTSD.[16] Yet

_____

preponderance of the evidence. If, after a presentation of the proof, the commission finds that there exists a reasonable basis for the disciplinary action taken, the action of the City shall be sustained.'" *Id.* at *7 (citation omitted). In **Koscinski v. Hamilton County**, No. E2014-00097-COA-R3-CV, 2014 WL 5501238 (Tenn. Ct. App. Oct. 31, 2014), this Court found that the standard properly applied by the civil service board—"reviewing a decision for political, personal, or arbitrary reasons"—came from the board's operating manual. *Id.* at *5, n.4. Although the UAPA provides guidance as to how the courts are to review the decision of the Board, the Act provides no similar guidance for how the Board was to evaluate the decision of Sheriff Mehr, nor have the parties cited to any operating manual that provides additional illumination.

[15] As counsel for Appellee explained when an objection was made to Sheriff Mehr testifying about POST rules and procedures: "He's got familiarity with POST rules and procedures. He has to be familiar with them. He might violate the law accidentally if he didn't know about them."

[16] Dr. Davis also testified in a contradictory manner about whether her conclusions were impacted

there are several concerns with this testimony. First, Dr. Davis was clear that she based her finding of PTSD on "sworn testimony" from the prior Commission hearing in which Appellant's first termination was at issue. But that was somewhat of a mischaracterization of the transcript that Dr. Davis was provided. Instead, the proof presented in the Board hearing revealed that Dr. Davis was relying on a statement of counsel concerning a doctor's note that listed among the "Assessments" for Appellant "PTSD" along with anxiety, depression, and "HA." It is true, however, that Appellant's counsel cited this note and its assessment of Appellant as having PTSD as a basis for overturning Appellant's first termination. Moreover, the note was admitted as an exhibit before the Board at the April 2017 hearing.

Still, while Dr. Davis was aware of this admission that Appellant suffered from PTSD at the time of the 2015 proceedings, she made no inquiry as to whether Appellant was currently suffering from PTSD or how that diagnosis affected Appellant's present ability to perform her job duties.[17] But section 38-8-106(9) clearly requires a causal link between the DSM-diagnosed impairment—i.e., PTSD—and Appellant's ability to do her job effectively. Dr. Davis conceded that individuals diagnosed with PTSD are not necessarily disqualified from serving in POST positions and that it could depend on the individual's symptoms and triggers. Without asking Appellant a single question about PTSD and without any of the testing indicating a "psychopathology" for PTSD, it is difficult to conceive how Dr. Davis was able to conclude that the allegedly disqualifying issues that Appellant exhibited on the final personality test were the result of her purported PTSD diagnosis. This is especially true given Dr. Davis's own testimony that she was unqualified to diagnose any person with PTSD.

Finally, if this Court is to consider Dr. Davis's later testimony that she did rely on Appellant's purported PTSD diagnosis, even though there is no indication in the proof that

---

by Appellant's testimony in a prior Commission hearing that during her leave, it would have been unsafe for her to have a loaded weapon. First, Dr. Davis testified as follows:

> Q. Now did you discuss with her any reservations that she had about carrying a loaded weapon?
> A. No.
> Q. Okay. Did you have any indication that she had concerns about carrying a loaded weapon?
> A. No.

Dr. Davis later testified that: "[W]ithin the scope of her saying that she had PTSD, there was talk of the fact that she did not need to be carrying a gun and that the people of Madison County weren't safe while she was carrying a gun." Dr. Davis also testified that "given the fact that her portion of PTSD or her symptoms dealt with the fact that she carried a gun, I just did not feel like she was qualified." Again, however, Appellant never testified that she suffered from PTSD and was never asked about any PTSD symptoms by Dr. Davis.

[17] According to Dr. Davis, such an inquiry would have been improper due to Appellant's refusal to disclose her diagnosis when asked about "psychological trauma."

Dr. Davis informed Sheriff Mehr of that reliance at the time of the termination, then it seems appropriate to consider all of the proof presented at the hearing before the Board. *Cf.* **Spadafina v. State**, 77 S.W.3d 198, 213 (Tenn. Crim. App. 2000) ("Tennessee has long recognized a 'good-for-the-goose, good-for-the-gander' rule that 'if a party opens the door for the admission of incompetent evidence, he is in no plight to complain that his adversary followed through the door thus opened; and this, although no objection was made in the first instance to the admission of such evidence.'" (quoting **Thomas v. State**, 121 Tenn. 83, 87, 113 S.W. 1041, 1042, (1908))).[18] That proof, of course, includes the testimony from Dr. Aronov that Dr. Davis's methodologies were suspect, as well as Dr. Avery's opinion that Appellant suffered from no impairment that would prevent her certification under section 38-8-106(9). Clearly, this testimony provides substantial and material evidence in support of the Board's decision. Moreover, the Board expressly ruled that this testimony was more credible than that of Dr. Davis, and this Court is bound by that assessment. *See* **Macon v. Shelby Cnty. Gov't Civ. Serv. Merit Bd.**, 309 S.W.3d 504, 509 (Tenn. Ct. App. 2009) ("On appeal, this Court affords 'considerable deference' to the Board's factual findings based on its determinations of credibility."). So then, it again appears that Appellant's reported failure of the psychological assessment required by section 38-8-106(9) was not a reasonable and sufficient cause to justify the termination of her employment when considering the record before the Board as a whole.

Nonetheless, Appellee asserts on appeal that it was not simply Appellant's failure to be certified under section 38-8-106(9) that gave Sheriff Mehr just cause to terminate her employment. Instead, Appellee asserts that Sheriff Mehr's own knowledge of Appellant's past testimony that it was unsafe for her to carry a loaded weapon coupled with the results of the psychological exam were sufficient to justify the termination of her employment regardless of whether the results met the requirements to cause POST decertification. At the hearing before the Board, however, Sheriff Mehr did not testify that he gave Appellant multiple grounds for the termination of her employment. Instead, it appears that Appellant was simply told that she failed Dr. Davis's psychological exam and that as a result, her employment was terminated. Moreover, during the hearing, Sheriff Mehr cited the POST rules as the reason that Appellant could not be employed by the Sheriff's Department. And Appellee argued before the Board that because Appellee failed the required psychological examination, Sheriff Mehr simply had "no other choice under the law" but to terminate Appellant's employment. So then, this pivot to a more amorphous basis for the termination appears to have occurred well after Appellant was notified of the termination of her

---

[18] It is also interesting to note that while Appellee's petition for judicial review in this matter stated that the testimony of Dr. Avery and Dr. Arnov was "irrelevant," it is not clear that Appellee ever objected to the admission of this evidence before the Board on that basis. Certainly, the transcript does not reflect that Appellee lodged such an objection at the time either expert was first called to testify. The Tennessee Supreme Court has held that a failure to object to the admissibility of evidence during a hearing governed by the UAPA may result in waiver. *See* **Robertson v. Tenn. Bd. of Soc. Worker Certification & Licensure**, 227 S.W.3d 7, 15 (Tenn. 2007) ("Robertson failed to preserve this issue for review because she did not object at the hearing to the felony convictions' admissibility."). Neither party has addressed this issue.

employment.[19]

Even so, after reviewing all of the evidence presented to it, the Board concluded that Appellant should be reinstated, relying on the testimony of Dr. Avery. We are simply not permitted to substitute our judgment for that of the Board as to its implicit finding that Appellant is fit to serve as a police officer. Indeed, Dr. Avery's testimony provided substantial and material evidence from which the Board could conclude that Appellant was fit to serve as a certified police officer. Moreover, the proof indicates that Appellant is currently POST certified and serving in a POST-certified position with another police department. Sheriff Mehr's fear that he could be subject to liability for employing a non-POST-certified officer therefore lacks merit. Accordingly, we conclude that Appellee has failed to demonstrate that the Board's decision to disapprove of the termination of Appellant's employment was made on unlawful procedure, not supported by substantial and material evidence, or otherwise arbitrary and capricious. Pursuant to the Act, "if discharge or demotion is disapproved by the . . . Board, the employee shall be reinstated to the position with full pay and rights from the day of the discharge or demotion." Madison County Sheriff's Civil Service Law of 2015, Priv. Ch. No. 6, H.B. 1385 §1.18. We therefore reverse the decision of the trial court, uphold the decision of the Board, and remand for further proceedings concerning Appellant's right to back pay under the Act, if necessary.

## V. CONCLUSION

The judgment of the Madison County Chancery Court is reversed, and this matter is remanded to the trial court for further proceedings as necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellee, Madison County, Tennessee, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[19] Indeed, even as late as its petition for judicial review, Appellee describes the basis for the termination as follows: "After learning that [Appellant] failed the psychological evaluation, Sheriff Mehr called a meeting with [Appellant], informed her that because she failed the psychological examination, she could not be POST certified, and terminated her." Appellee did argue later in the trial court proceedings that Sheriff Mehr could terminate Appellant regardless of any POST decertification.